[S. F. No. 13510. In Bank.—April 24, 1930.]

LEO HOFFMAN, Petitioner, v. DEPARTMENT OF IN-DUSTRIAL RELATIONS OF THE STATE OF CALIFORNIA, DIVISION OF INDUSTRIAL ACCI-DENTS AND SAFETY, and PAUL BROSCHINSKY, Respondents.

384

George D. Collins, Jr., for Petitioner.

G. C. Faulkner, Edward O. Allen, Herbert C. Kaufman, and F. W. Sawyer for Respondents.

Daniel W. Burbank, *Amicus Curiae*, for Respondents.

WASTE, C. J.—The above cause was transferred to this court after decision by the District Court of Appeal, in order that further consideration might be given to the contention of the petitioner that the Industrial Accident Commission acted in excess of its jurisdiction in finding that the employer was guilty of "serious and wilful misconduct," and in imposing the additional fifty per cent compensation permitted by the Workmen's Compensation Act in such cases. Such further consideration convinces us that the award was proper and that the decision of the District Court of Appeal correctly disposes of that question. The opinion of the District Court of Appeal, written by Mr. Justice Sturtevant, and concurred in by the late Mr. Presiding Justice Koford and by Mr. Justice Nourse, is therefore adopted as the opinion of this court in the cause:

"This is a proceeding brought to review an award heretofore made by the respondents in a proceeding brought before the respondents by Paul Broschinsky in an endeavor to obtain the compensation payable to him as an employee because of injuries sustained by him in an accident which befell him when, in the course of his employment, the floor on which he was standing gave way and he fell to the ground below. Through an abundance of precaution he named as defendants Leo Hoffman and his insurance carrier, the Metropolitan Casualty Company, and he also named Charles S. Hoffman and Ludwig W. Fleigner, doing business as Golden Gate Iron Works, and their insurance carrier, the State Compensation Insurance Fund. This multiplicity of defendants arose because of the debatable question whether Leo Hoffman was but the agent of Golden Gate Iron Works and the latter was, in truth and in fact, applicant's employer; or whether Leo Hoffman was an independent contractor and the applicant was his employee. The respondents adopted the latter theory and dismissed all defendants except Leo Hoffman and his carrier.

"The case then proceeded against the remaining defendants. That Leo Hoffman, as employer and Metropolitan Casualty Company, as his carrier, were liable to the applicant was not disputed. But the respondents held that the employer was guilty of 'serious and wilful misconduct' and that the compensation payable should be increased fifty per cent. It also held that the employer's carrier was liable for the sums based on section 9 of the Workmen's Compensation Act, but that the penalty of fifty per cent added under section 6 of said act should be borne solely by the employer. They made this segregation of liability in conformity with the statute. (Secs. 6 and 31b.) The employer has filed in this court his petition praying to have annulled that portion of the award so made against him, claiming that he was not guilty of 'serious and wilful misconduct,' and, as he carried insurance, the burden should rest on his carrier and that he should have been dismissed. The accident occurred while the applicant was acting as helper in the erection of a steel-frame apartment house at Palo Alto, California. The Golden Gate Iron Works had the contract to furnish the material and erect the frame. Leo Hoffman had the contract to do the erecting for the Golden Gate

Iron Works. The building being erected was one consisting of five stories and a roof. It had no excavation under it, but commenced at the ground level. Immediately before the accident happened the work had progressed to a point where the first and second stories had been erected, a temporary plank floor had been laid over the beams, and columns for the third story had been assembled on the temporary floor and the workmen were engaged in distributing those columns in piles for the purpose of putting the columns in place. In some places the span between the beams was over thirteen feet. At the particular place where the accident occurred the span from center to center was fifteen feet two inches. Through a mutual arrangement between Leo Hoffman and the general contractor the wooden floor joists, consisting of pine boards sixteen feet long, twelve inches wide and two inches thick, were delivered on the job by trucks, and Leo Hoffman had the privilege of hoisting the planks and distributing them on any floor and using them as temporary flooring. In accordance with this arrangement his employees had, the day before the accident, hoisted and distributed the planking and in this manner had constructed the temporary floor. Neither at the span where the accident occurred nor in any other span, so far as the record discloses, was an intermediate beam or other device used to support the temporary flooring. The employer testified that to insert an intermediate beam of wood might necessitate the use of a saw, but that there was no saw on the job and he had never seen a saw on an erecting job. As to whether the planks were laid close together there was much dispute. In this regard the evidence is clear to the effect that the columns projected somewhat above the beams of the floor and bolts projected from the columns and beams in places. Because of these two facts no floor was laid from one column to the opposite column on any given string of columns, and the planking alongside of the columns was distant, according to the evidence, from one and one-half inches to three inches, thus leaving a space of possibly sixteen inches instead of twelve inches in the event that a plank should break. Paul Broschinsky went to work on the day of the accident. During that day the men were engaged in distributing the columns for the third story. At about three o'clock in the afternoon, while so engaged, Paul

Broschinsky and another fellow-laborer, J. Jensen, both happened to step on the same plank at the same time. As they did so the plank broke. Jensen succeeded in catching hold of a support and did not fall to the ground. However, Paul Broschinsky was not so fortunate, and he fell to the ground suffering the injuries which are the subject matter of this claim. An examination of the broken plank disclosed that it was a piece of timber sawed from immediately adjacent to a knot, and the board so produced was apparently clear on one side but it had the rings of a knot on the other side. This board had been placed on the temporary floor knot-side down. Evidence was introduced that from time to time the respondents had issued certain safety orders and that those orders had been posted on some of the buildings which were being erected by Golden Gate Iron Works. There is no evidence that this petitioner, Leo Hoffman, was engaged on any one of said buildings, nor that he ever saw or heard of the orders or the contents thereof. There is no claim that any one of the orders was posted on the building on which this accident arose. There was evidence that on a date three or four months prior to the accident, while erecting another building, one of the agents of the respondents had occasion to bring to the attention of Leo Hoffman that he was violating chapter 334 of the Statutes of 1921, page 452; that is, the particular statute other provisions of which are involved in this application.

▪ ''The petitioner claims that it may not be said that he was guilty of 'serious and wilful misconduct' because he violated certain safety orders issued by the respondents. That claim, we think, is well founded. As we have shown above there is no evidence that he ever saw or heard of such orders. He did not wilfully violate an order which, so far as the record shows, he had never seen nor heard of.

▪ ''As· to chapter 334, Statutes 1921, page 452, the petitioner claims he did not violate any of its provisions. This claim is based on the fact that no column of the third story had been erected at the time of the accident and, therefore, the duty to lay temporary floors had not arisen. This point involves a construction of the statute. It is not necessary to quote the entire statute. It is not claimed that the statute applies to a building of one or two stories. It is not claimed that the statute applies to a higher building

at any instant of time before the second story has been erected. But after that instant it then becomes necessary to lay a temporary floor. This is so for two reasons. The clear purport of the statute is to create a device not for the absolute prevention of accidents, but for lessening the injury to the human body that may fall, and lessening the effect of falling missiles which may fall and hit a human body. The statute by its terms seeks to limit those falls to two stories. Two stories having been erected, it then becomes necessary to lay temporary floors. The floors having been laid, the next act is to assemble on that floor the columns to be incorporated into the next story. Although no one of those columns has been erected, the matter of arranging for the erection of them and for the assembling of them creates a potential danger which the statute is aimed to protect against just as effectively as against acts done in the actual erection of one or more of them. There is only one exception as to the zone which need be covered with a temporary floor—'except such space as may reasonably be required for the proper construction of such building.' (Sec. 1, subd. b, chap. 334, Stats. 1921, p. 452.) That expression, we understand, applies to the elevator shaft, or similar space which is ordinarily kept clear and used, from the basement to the roof, as a passageway for hoisting and lowering of materials. But such space, so excepted, is not involved in this case.

"From the facts which we have hereinabove enumerated we think it is clear that there was evidence that the building on which the accident occurred, and the stage to which the erection had progressed, came within the provisions of chapter 334, Statutes 1921, page 452; and we also think it is clear that there was evidence that this petitioner had violated the provisions of said act by covering a span exceeding thirteen feet with boards which were only two inches thick and which were not supported by an intermediate brace and which were not laid tightly together. (Chap. 334, Stats. 1921, sec. 1, subd. b.)

"In the next place he claims that he was not guilty of 'serious and wilful misconduct' even though he violated the provisions of chapter 334 of the Statutes of 1921, page 452. He rests that claim on several different contentions. He claims that he did not know of the contents and that nobody

called the contents of said statute to his attention. However, as we have shown, the contents of the statute were called to his attention. ■ Furthermore, 'In neither a criminal nor civil cause, in any circumstances, can one justify his act by the naked showing that he did not know of the existence of the law.' (10 Cal. Jur. 760, sec. 72.)

■ "He then asserts that even though he violated the statute, that mere violation of the statute is not 'serious and wilful misconduct.' He quotes from *Helme* v. *Great Western Milling Co.*, 43 Cal. App. 416, p. 421 [185 Pac. 510, 512], as follows: ' "Wilful misconduct" means something different from and more than negligence, however gross. The term "serious and wilful misconduct" is described by the supreme court of Massachusetts as being something "much more than mere negligence, or even gross or culpable negligence," and as involving "conduct of a *quasi* criminal nature, the intentional doing of something either with a knowledge that it is likely to result in serious injury, or with a wanton and reckless disregard of its possible consequences." (*In re Burns,* 218 Mass. 8 [Ann. Cas. 1916A, 787, 105 N. E. 601].) The mere failure to perform a statutory duty is not, alone, wilful misconduct. It amounts only to simple negligence. To constitute "wilful misconduct" there must be actual knowledge, or that which in the law is esteemed to be the equivalent of actual knowledge, of the peril to be apprehended from the failure to act, coupled with a conscious failure to act to the end of averting injury.' He also cites and quotes from *E. Clemens Horst Co.* v. *Industrial Acc. Com.,* 184 Cal. 180, 188, 189 [16 A. L. R. 611, 193 Pac. 105, 108], as follows: ' "Serious misconduct" of an employer must, therefore, be taken to mean conduct which the employer either knew, or ought to have known, if he had turned his mind to the matter, to be conduct likely to jeopardize the safety of his employees. . . . Next, as to whether such serious misconduct was "wilful." It has frequently been said that wilful misconduct involves the *knowledge* of the person that the thing which he is doing is wrong. (Citing cases.) Conceding that knowledge is required, it seems to us that in order to prove the requisite knowledge, it is not necessary for the evidence to show positively that the person was notified of the unsafe condition of his premises, but that it is sufficient if it appears

that the circumstances surrounding the act of commission or omission are such as "evince a reckless disregard for the safety of others and a willingness to inflict the injury complained of." ' With the rule of law as stated by the petitioner, we fully agree. However, we think that the facts of this case bring it within, rather than exclude it from, the rule quoted. It will be conceded that the violation of one statute may be far more serious than the violation of another statute; and that the violation of the same statute under one set of facts may not be serious, whereas under a different set of facts it will be quite serious indeed. When, as here, men are at work at high elevations standing on narrow beams or temporary floors if an accident happens the possibilities of danger are many and the probability is strong that if injury occurs it will be deplorable. It is, therefore, plain that the violation of the provisions of chapter 334, Statutes 1921, under the facts of this case, could be said to be 'serious misconduct.' The employer was presumed to know the law. (10 Cal. Jur. 760.) Moreover, there was some evidence that he actually did know it. There was evidence that some of the spans were more than thirteen feet and over which the law required that the temporary floors be laid; that under those long spans it was necessary to insert an intermediate brace; that, to lay the boards tightly together between the columns as well as over the rest of the floor the planks must be cut to set in between columns and that they must be supported from below so as to fill the gaps and avoid the protruding nuts and bolts; and that to do these things the employer knew that the crew needed, but that it did not have and never had had, a saw. As the crew had no saw the employer knew that it could not lay the temporary floors in compliance with the law and that any failure to do so was fraught with danger to the life and limb of every member of the crew. These facts the petitioner did not attempt to deny, but he attempted to justify his noncompliance with the terms of the statute by making a showing as to what others did and a showing of the inconvenience of a full compliance. In view of these facts we have no hesitancy in saying that there was evidence before the respondents from which they had the right to say that in the instant case there was on the part of the petitioner 'the intentional doing of something either with

the knowledge that it is likely to result in serious injury, or with a wanton and reckless disregard of its possible consequences.' (*In re Burns*, 218 Mass. 8 [Ann. Cas. 1916A, 787, 105 N. E. 601].) It follows that the finding that the acts of the employer constituted 'serious and wilful misconduct' was not in excess of jurisdiction.''

The award is affirmed.

Preston, J., Seawell, J., Curtis, J., and Shenk, J., concurred.

RICHARDS, J., Dissenting.—I dissent.

The facts of this case are fairly stated in the majority opinion herein, with the exception that there should be added thereto and emphasized the facts that the undisputed evidence before the commission disclosed that the defect and consequent weakness of the particular piece of planking which broke under the combined weight of the petitioner's employees was not known either to himself or to them, and that this was due to the circumstances that such defect was only and not easily observable upon the underside of said piece of planking, and that, so far as the upper side thereof disclosed, it was apparently as sound as the other pieces of plank which composed such temporary flooring. The further fact should be noted that the petitioner herein did not personally direct the laying of such flooring, nor personally participate therein, and that whatever "serious and wilful misconduct" is to be attributed to him by reason thereof was, in so far as the evidence herein disclosed, the "serious and wilful misconduct," if any, of his employees. His only noncompliance with the provisions of the act of 1921, upon the basis of which the respondents herein can sustain the charge of serious and wilful misconduct on the part of the petitioner, consisted in the fact that he caused or permitted such flooring to be laid over portions of the space to be covered thereby wherein the distance between the beams which were to support said flooring was in excess of thirteen feet without an intermediate beam sufficient to support such temporary flooring where the span was in excess of thirteen feet. It may not be questioned that the omission of the petitioner to support this particular part of said flooring with an intermediate beam would have been such

an act of negligence upon his part as would have amply sufficed to sustain the finding of the commission with respect to a compensatory award, but whether or not such omission would in and of itself be sufficient to justify a finding that the petitioner was thereby guilty of such serious and wilful misconduct as would support the added award of the penalty complained of is the question to be decided. This court has had occasion in certain earlier cases to discuss and define the meaning of the phrase "serious and wilful misconduct" as the same is used in the provisions of the Workmen's Compensation Act here under review. In the case of *E. Clemens Horst Co.* v. *Industrial Acc. Com.*, 184 Cal. 180, 188 [16 A. L. R. 611, 193 Pac. 105, 108], this court in undertaking to define these terms adopted the view expressed by Bevin in his treatise on "Workmen's Compensation" at page 394 et seq., to the effect that "to constitute 'serious misconduct' it is probable that the legislature intended to signify conduct that an average workman in being guilty of, either would know, or ought to know, if he turned his mind to consider the matter, to be conduct likely to jeopardize his own and his fellow workman's safety." "In our opinion," says this court, "the serious misconduct of an employer under our statute may be similarly defined. There should be no difference in principle between the degree of care required of an employer and that exacted from an employee. 'Serious misconduct' of an employer must, therefore, be taken to mean conduct which the employer either knew, or ought to have known, if he had turned his mind to the matter, to be conduct likely to jeopardize the safety of his employee." The court in that case having found that the employer in providing places and conditions of the employment which were patently unsafe was guilty of "serious misconduct," proceeded to discuss the question as to whether such serious misconduct was "wilful" and in so doing the court said: "It has frequently been said that wilful misconduct involves the knowledge of the person that the thing which he is doing is wrong. [Citing cases.] Conceding that knowledge is required it seems to us that in order to prove the requisite knowledge it is not necessary for the evidence to show positively that the person was notified of the unsafe condition of his premises, but that it is sufficient if it appears that the circumstances surrounding the act or commission or omis-

sion are such as '*evince a reckless disregard for the safety of others and a willingness to inflict the injury complained of.*' " In *Helme* v. *Great Western Milling Co.*, 43 Cal. App. 416, 421 [185 Pac. 510, 512], it is said: " 'Wilful Misconduct' means something different from and more than negligence, however gross. The term 'serious and wilful misconduct' is described by the supreme court of Massachusetts as being something 'much more than mere negligence, or even gross or culpable negligence' and as involving 'conduct of a *quasi* criminal nature, the intentional doing of something either with the knowledge that it is likely to result in serious injury, or with a wanton and reckless disregard of its possible consequences. [Citing *In re Burns*, 218 Mass. 8.] The mere failure to perform a statutory duty is not alone wilful misconduct. It amounts only to simple negligence. To constitute wilful misconduct there must be actual knowledge, or that which in the law is esteemed to be the equivalent of actual knowledge, of the peril to be apprehended from the failure to act, coupled with a conscious failure to act to the end of averting injury. (*Smith* v. *Central etc. Ry. Co.*, 165 Ala. 407 [51 South. 792].) " In denying a rehearing in the above case this court reserved its opinion on the question as to "whether every failure to comply with the requirement of the Industrial Accident Commission or the statute is necessarily gross negligence or wilful misconduct. On these questions we reserve expression of opinion." Upon a mature consideration of this question I am satisfied that the foregoing quotation from the case of *Helme* v. *Great Western Milling Co., supra,* furnishes a correct interpretation of the meaning to be given to the terms "serious and wilful misconduct" as the same are used in the Workmen's Compensation Law. The question as to whether the acts or omissions of the employer in violation of the requirements of the Workmen's Compensation Act constitute serious and wilful misconduct depends upon the circumstances of each particular case. In that connection it may be stated as a sound principle to be applied to penal provisions of the nature here under review that such provisions are to be strictly construed and are not to be given application so as to impose penalties upon employers who are otherwise subject to the compensatory remedies provided for in the Workmen's Compensation Act, without a clear showing before the com-

mission of such acts and conduct on the employer's part as evince not only actual knowledge of the law, but such an intentional disobedience thereof as would amount to a reckless disregard of the safety of his employees. I am unable to find in the facts of this particular case such a sufficient showing of wilful and intentional disregard of the safety of his employees as would suffice to justify the findings and conclusion of the commission that the petitioner was guilty of such serious and wilful misconduct as to bring him within the penalty prescribed by the Workmen's Compensation Act and imposed upon him in this particular case. The award of the commission, in so far as it undertakes to impose such penalty, should, therefore, have been annulled.

Rehearing denied.

Richards, J., voted for a rehearing.