[L. A. No. 11767. In Bank.—April 28, 1930.]

PACIFIC EMPLOYERS INSURANCE COMPANY (a Corporation) et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION AND LEON S. THOMPSON, Respondents.

F. Britton McConnell and Ewell D. Moore for Petitioners.

Edward O. Allen for Respondents.

SEAWELL, J.—[1] This cause presents a single question: Was the industrial, compensable injury sustained by respondent Leon S. Thompson caused by the serious and wilful misconduct, within the meaning of section 6, subdivision b, of the Workmen's Compensation Act (Deering's Gen. Laws, Act 4749, pp. 1710, 1715 et seq.), of his employer, petitioner Patterson-Ballagh Corporation, a corporation? A statement of the case follows:

On October 31, 1928, said respondent Thompson, while performing duties arising out of and in the course of his employment by said corporation, sustained severe injuries to his hand by reason of its contact with a revolving circular saw. Petitioner Pacific Employers Insurance Company, a corporation, the insurer of said employer, assumed liability for the normal benefits due said employee under said act. Upon hearing of the claim before the Industrial Accident Commission, however, that body found that said injury was proximately caused by the serious and wilful misconduct of the employer and it therefore awarded said employee, in addition to a permanent disability of thirty-four per cent, or $2,518.72, the sum of $1259.36, that is, an increased indemnity of fifty per cent to be paid by said employer by reason of its said alleged serious and wilful misconduct. Petitioners thereupon filed their application for writ of review. The main award is not disputed, but by the instant proceeding they seek to have annulled the latter portion thereof imposing said penalty of fifty per cent. Hence, as above stated, the question is whether in the light of the evidence adduced upon the hearing and the provisions of said Workmen's Compensation Act, which permit the imposition of such a penalty, respondent Commission was warranted in finding said employer guilty of such serious and wilful misconduct as justified them in assessing it. The facts are simple and the evidence is substantially without conflict.

Said employer had been engaged for some months in the manufacture of oil-well specialties made of rubber. Shortly before the accident it undertook to install in its plant for

the first time power-driven machinery. Mr. Patterson, the president of the corporation, purchased what he considered the best power-driven saw on the market for his purpose— a combined cross-cut and rip-saw, so arranged that when in use the rip-saw cutting edge could be raised to project through a slot in the table, but when not in use it could be lowered below the table surface. When in use it was unguarded and when not in use it was below the level of the stand and was harmless. Mr. Patterson employed C. N. Dingle, an industrial engineer, to install said motor-power machinery. He had been in the manufacturing business for some months prior to the injury suffered by the employee, Thompson. The saw as delivered was affixed to a stand which was a part of its equipment and was in readiness for action, but the saw proper was unguarded. Mr. Patterson, the employer, was asked the following questions upon the hearing and gave the answers which follow:

"Q. . . . In other words, when it showed up on the job was it just what you expected? A. No, not in regards to guards, no. Q. Did you order at the time any guard or anticipate any guard for the rip saw? A. I anticipated guards, yes. Q. Did you discover the fact that there were no rip guards? A. Yes, that is correct. Q. Before it was used? A. Before it was used. Q. Did you at the time take any steps to remedy its then condition? A. Yes, I did. Q. What steps, if any, did you take?" To this question the witness stated that he "purposely" hired a man who represented that he understood saws and saw conditions and that he was the only man to handle the saw. The man to whom reference was made is Thompson, the employee, who by trade is a carpenter, but who professed to have some skill in the use of circular saws. The witness Patterson admitted that he knew as "of course" that there were certain rules adopted by the Industrial Accident Commission dealing with the standards of safety and guarding the equipment in his plant. The state of the evidence is such on the issue of his knowledge of safety requirements—if his failure to inform himself on that subject be a defense—that the Industrial Accident Commission sitting as judges of the evidence could well have found and undoubtedly did impliedly find from the testimony of Mr. Patterson, the president of said corporation, as well as from other testimony, that he had knowl-

edge of the existence of "wood working safety orders" adopted by the Commission which required him to place a safety device on the saw; that no guard was practical is rebutted by the photographs of the saw as now used, which appears to be practical and at the same time affords protection to the workman who uses the saw. The testimony of the employee was that had the saw been guarded he would not have sustained the loss of his thumb and portions of two fingers. The evidence seems to sustain this conclusion.

C. N. Dingle, the engineer who installed said machinery, testified that none of the machinery was safeguarded for the reason that it was in the course of construction, and, as he continued, "we hadn't gotten to the safeguarding point yet. . . . At the time of getting the saw in, it was suggested that that would be another thing that we would have to do. . . . In my opinion there should be a safeguard on it [the saw]." He further testified that it was his intention to provide a safeguard for said rip-saw. The machinery and saw were in operation about a week before the injury occurred. It seems clear that the Commission was fully justified in finding that the employer was careless and indifferent as to the safety of its employees. Its haste to set in motion its machinery before it was lawfully prepared to do so was the assumption of a hazard which it had no right to assume.

The room in which the saw was installed seems to have been small and quite crowded with lumber and other materials. As another employee entered the room the attention of Thompson was momentarily arrested from his employment and his thumb and fingers were amputated as above described. This circumstance may as likely happen to the most skilful mechanic as to one without skill. It was to insure against such fortuitous causes that the safeguarding of dangerous machinery was made mandatory.

Petitioners' insistence that no sufficient evidence appears in the record to sustain a finding of serious and wilful misconduct on the part of the employer cannot be sustained, but must be overruled. "Wilfully, when applied to the intent with which an act is done, or *omitted*, implies simply a *purpose* or *willingness* to commit the act, or make the omission referred to. It does not require any intent to violate law or to injure another, or to acquire any advantage." (Sec. 7, subd. 1, Pen. Code.) (Italics ours.)

The seriousness of the failure or refusal on the part of the employer to comply with the order of the Commission is self-evident. This case on principle is not distinguishable from *Hoffman* v. *Industrial Acc. Com.*, *ante*, p. 383 [68 A. L. R. 294, 287 Pac. 974], S. F. No. 13510, filed as of date April 24, 1930.

It is clear to us that the award must be affirmed, and it is so ordered.

Curtis, J., Shenk, J., and Waste, C. J., concurred.

PRESTON, J., Dissenting.—I dissent.

The evidence in this case, though sufficient to sustain the compensatory award, offers no justification whatsoever for the imposition of a fifty per cent penalty for alleged serious and wilful misconduct on the part of the employer nor, in my opinion, is the case of *Hoffman* v. *Industrial Acc. Com.*, *ante*, p. 383 [68 A. L. R. 294, 287 Pac. 974], S. F. No. 13510, controlling here.

The circumstances of each particular case, viewed in the light of the provisions of the Workmen's Compensation Act, must determine the question of whether the acts or omissions of an employer constitute serious and wilful misconduct, " . . . conduct which the employer either knew, or ought to have known, if he had turned his mind to the matter, to be conduct likely to jeopardize the safety of his employees." (*E. Clemens Horst Co.* v. *Industrial Acc. Com.*, 184 Cal. 180, 188 [16 A. L. R. 611, 193 Pac. 105, 108].)

In this case the record shows that Mr. Patterson, the president of the employer corporation, had purchased what he considered the best machine of its type on the market; that he was not familiar with such machinery and, therefore, took the precaution to employ an experienced industrial engineer to help him and to supervise its installation. It appears that this engineer had not found a guard for the saw which was acceptable when it was in operation and, although he intended to try to guard it in some way, he knew of no absolute safeguard for it. He stated he had no hesitancy in ordering a man to operate it as it then stood. His views, of course, were followed by said employer, but, in this situation, such further steps were taken by it as

Mr. Patterson felt might serve to insure the operator's safety. To this end he made certain that the operator he hired thoroughly understood saws. Not only this, but he consulted said operator on the subject. No objection was made to the saw being unguarded, but the operator did ask, as his workroom was congested, that no one else be allowed to enter it and this request was promptly acceded to.

Serious and wilful misconduct involves much more than mere negligence or even gross or culpable negligence. It contemplates actual knowledge, or that which in the law is esteemed to be the equivalent of actual knowledge, on the part of an employer that the thing which he is doing is wrong, coupled with a conscious failure to act to the end of averting injury; that is, it must appear that the circumstances surrounding the act or omission are such as "evince a reckless disregard for the safety of others and a willingness to inflict the injury complained of." (See *E. Clemens Horst* v. *Industrial Acc. Com., supra,* and *Helme* v. *Great Western Milling Co.,* 43 Cal. App. 416, 421 [185 Pac. 510].)

It will be noted that in this case there is involved no intentional or wilful violation on the part of the employer of any statute or safety order of the Industrial Accident Commission because the evidence shows that it had no knowledge of any requirement with respect to further guarding the piece of machinery in question. It is also clear that in the hiring of said experienced engineer and experienced operator and in its compliance with the suggestions offered by these persons, this employer gave thought to the exercise of reasonable care for the safety of its employees. There is no evidence whatsoever of a reckless disregard for their safety. In other words, I do not believe the record before us contains any justification whatever for the finding on the part of respondent Commission of such serious and wilful misconduct on the part of said employer as should subject it to the penalty imposed. The award of the Commission to my mind, in so far as it undertakes to impose said fifty per cent additional compensation penalty, should be annulled.

Richards, J., concurred.

Rehearing denied.

Richards, J., and Preston, J., voted for a rehearing.