[Civ. No. 7672. Second Appellate District, Division Two.—April 1, 1931.]

LOUIS J. JOHANNSEN et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION and HARRY S. BURT, Respondents.

Charles E. Hobart and Sidney Sampson for Petitioners.

Edward O. Allen and John W. Carrigan for Respondents.

THOMPSON (IRA F.), J. — This application seeks to annul an award of the respondent commission in favor of respondent Harry S. Burt. The facts sustaining the award are as follows: The petitioners both owned a lot adjoining each other. They determined to pool their interest and improve them. They built a drive-in-market upon the lots for the purpose of renting space therein for various purposes. Peterson owned two similar markets. They then purchased an old four-family flat building, which they moved on to the rear of one of the lots, intending also to erect twenty auto camp units in the rear of the flat building. It was in connection with the digging for and placing the sewer for this flat building with possibility of later tying in with the auto camp units in which the respondent Burt was injured. At the suggestion of a plumbing company Mr. W. F. Scott, who was not a master plumber, called on Peterson on March 27, saying that he understood Peterson desired to hire a plumber by the day to do some

work, to which Peterson said they would go and look at the job to be done. They inspected the contemplated work in the house and Peterson inquired how long it would take. Scott informed him that it would require two or three days, and when Peterson asked Scott to take out the permit the latter informed him that he could not do it, but that he thought arrangements could be made through a Mr. Vick, who was in the plumbing business, to take out the permit in the name of the owners. This arrangement was .agreed upon, Peterson consenting to the payment to Mr. Vick of a small sum to compensate him for his trouble.. Scott busied himself figuring out the material which Peterson informed him he could buy at wholesale prices. Burt accompanied Scott on this particular day and asked for the work of plastering, but Peterson said the carpenters could care for the little that was to be done. Scott also asked about the sewer work, to which Peterson replied: ''I haven't decided on the sewer yet.'' A couple of days later, however, he said to Scott, ''Well, you'd just as well go ahead with this sewer,'' and instructed Scott to get his brother-in-law Burt to do the digging. Burt came on the following morning and after digging a ditch for the water pipes, started excavating for the sewer. Peterson talked to Burt the first morning that he was on the job and told the latter that he could also have the work of putting up a chimney and a little plastering. The sewer trench ranged in depth from about three feet next to the house to about nine feet, where it connected with the main line in the street. On the fifth day the trench caved in on Burt, causing the injuries for which claim was made. On the morning preceding the injuries the two men, Scott and Burt, were in the act of shoring up the sides of the trench when they were stopped by Peterson and told that it was unnecessary. The materials for the sewer were paid for by the petitioner Peterson. Immediately after the accident Peterson presented a document to Scott with the request that he have Burt sign it, in which instrument Burt was to state that Scott was his employer. He also offered to loan Burt $50 with the understanding that it did not need to be repaid. Further he wanted Scott to ask Vick to assume responsibility and also to offer the sewer inspector $35 or $40 to keep still. Relative to the cost of the plumbing and sewer work

the testimony discloses that the labor and materials totaled "at least $200". Scott received $9 per day and Burt $6. The evidence is somewhat confusing concerning the time taken to do the work. Scott finished the plumbing under the house on the third day of his employment and started to assist respondent Burt in the digging of the sewer on April 1st. Burt was injured on the fifth day of his employment, or on April 3d. At least two others worked two more days and still another man dug for an additional day. In one place the witness Scott says that he put in sixteen days and two hours on the job and again that he went to work on March 29th and continued until April 21st on the plumbing and sewer work.

The petitioners contend that Burt was not an employee of theirs but of an independent contractor, Scott. They also urge that the employment was both casual and not in the course of their trade, business or occupation, and finally that there was no serious or wilful misconduct on the part of petitioners justifying an increase of the award for that reason.

It is only just to petitioners to say that we have not set down the testimony adduced by them before the respondent commission because if we find in the record any substantial evidence to sustain the award we are bound by the findings. We have therefore only narrated the supporting evidence. It is patent, however, that the finding of the commission that the respondent Burt was an employee of petitioners is amply supported. Not only was he an employee but the testimony is sufficient to justify the conclusion that Scott was in the same category and was not an independent contractor.

We may assume that the work which Burt was employed to perform was not in the "course of the trade, business, profession or occupation of his employer" because we have concluded that we are also compelled to say that the finding that the employment was not casual is also not without support. Section 8c of the Workmen's Compensation Act (Deering's Gen. Laws, 1923, p. 1716) defines the term casual as follows: "The term 'casual' as used in this section shall be taken to refer only to employments where the work contemplated is to be *completed* in not exceeding ten working days, without regard to the number of men employed,

and where the total labor cost of such work is less than one hundred dollars." The evidence recited justifies the conclusion arrived at by the commission that considerably more than ten days was necessary to complete the work contemplated and that the total labor cost was more than $100.

Nor can we say that there is not evidence of misconduct on the part of the petitioners authorizing an increase of the award. The testimony of Scott clearly supports the belief that petitioner Peterson not only failed to shore the sides of the trench but actually ordered Scott and respondent Burt to stop the act of shoring. The trench had been caving in before the accident happened. Had he turned his mind to a consideration of the subject he must have known that a person working in the trench was in jeopardy, which danger could readily have been obviated by the necessary bracing.

Award affirmed.

Craig, Acting P. J., and Archbald, J., *pro tem.*, concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 1, 1931, and an application by petitioners to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 28, 1931.