[L. A. No. 18334. In Bank. Sept. 24, 1942.]

WILLIAM R. PARKHURST, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

William J. Currer, Jr., for Petitioner.

C. Wesley Davis, Everett A. Corten and J. Gould for Respondents.

T R A Y N O R, J.—Respondent Industrial Accident Commission awarded the petitioner compensation for injuries received in the course of his employment but denied an

additional award claimed by reason of the alleged serious and willful misconduct of the employer. The sole issue in this proceeding is whether the commission's order that petitioner's injury was not caused by the serious and willful misconduct of the employer finds support in the record.

Between June 9, 1938, and September 15, 1938, petitioner was employed as a journeyman ironworker by the J. Phillip Murphy Corporation, which was engaged as a subcontractor in the installation of structural iron on a building project at Camarillo, California. In the course of his employment petitioner was exposed to entamoeba histolytica through the drinking water furnished at the project, and contracted amoebic dysentery. The medical testimony disclosed that the disease is usually contracted by drinking contaminated water, that water can be contaminated by contact with fecal matter or contaminated hands, and that a single person who is a carrier of the disease can infect the water supply and cause an epidemic among persons drinking the water. The water line at the project was attached to a pipe connecting an irrigation pump and a neighboring uncovered reservoir. When a certain valve was opened to irrigate adjoining land, water from the reservoir would siphon into the water line and outlets on the job. There was evidence that the reservoir was used as a swimming pool and that tests made by the county health authorities on May 17, 1939, revealed that the water, although still classified by them as good, was contaminated with fecal matter. The water was drawn from faucets used by the men in washing their hands on their way to and from the toilets, which were near some of the faucets. It was supplied to the men by an open bucket and common dipper, in violation of statutes requiring closed containers and individual drinking cups. (Stats. 1917, p. 1517, Deering's Gen. Laws, Act 6259; Stats. 1915, p. 815, Deering's Gen. Laws, Act 4725.) The employer, commencing work as subcontractor after construction was under way, accepted the facilities furnished by the general contractor. He knew how the water was distributed, but made no inquiry as to its source. At no time did he attempt to furnish his employees with pure, fresh drinking water. Numerous men complained at various times to the employer's superintendent and managing representative that the drinking water had a foul taste and odor, and gave them diarrhea and cramps. The superintendent acknowledged that the water was bad, but said in

effect that no other was available. All water available from wells in the district had a somewhat unpleasant taste and odor. The uncontradicted testimony of the health authorities disclosed that they inspected the premises on August 30, 1938, in response to complaints made to their office regarding the method of distributing the water, and that they ordered the contractor to desist from distributing water in open containers and common dippers.

Petitioner relies upon the violation of the statutes and the complaints by the men to support his contention that the employer was guilty of serious and willful misconduct. He contends that there was no evidence to support the commission's contrary conclusion and attacks particularly the commission's finding that "No officer or representative of J. Phillip Murphy Corporation had any knowledge, either actual or constructive, that the drinking water or the facilities for distributing the drinking water furnished to its employees on this job, was capable of producing amoebic dysentery, or was otherwise dangerous to the health of its employees." The commission did find, however, that petitioner was injured in the course and scope of employment, and awarded compensation accordingly.

Serious and willful misconduct is conduct that the employer knew, or should have known, was likely to cause serious injury, or conduct that evinces a reckless disregard for the safety of others. (*Hatheway* v. *Industrial Acc. Com.*, 13 Cal. (2d) 377 [90 P. (2d) 68] ; *Ethel D. Co.* v. *Industrial Acc. Com.*, 219 Cal. 699 [28 P. (2d) 919] ; *Hoffman* v. *Dept. of Indus. Relations*, 209 Cal. 383 [287 Pac. 974, 68 A. L. R. 294] ; *Pacific Emp. Ins. Co.* v. *Industrial Acc. Com.*, 209 Cal. 412 [288 Pac. 66] ; *Gordon* v. *Industrial Acc. Com.*, 199 Cal. 420 [249 Pac. 849] ; *Blue Diamond Plaster Co.* v. *Industrial Acc. Com.*, 188 Cal. 403 [205 Pac. 678] ; *E. Clemens Horst Co.* v. *Industrial Acc. Com.*, 184 Cal. 180 [193 Pac. 105, 16 A. L. R. 611] ; *Helmick* v. *Industrial Acc. Com.*, 46 Cal. App. (2d) 651 [116 P. (2d) 658] ; *Helme* v. *Great Western Milling Co.*, 43 Cal. App. 416 [185 Pac. 510].) It has been held repeatedly that the employment of workmen under dangerous conditions that can be guarded against constitutes a reckless disregard for their safety. (*Hatheway* v. *Industrial Acc. Com.*, *supra*; *Hoffman* v. *Dept. of Indus. Relations*, *supra*; *Pacific Emp. Ins. Co.* v. *Industrial Acc. Com.*, *supra*; *Gordon* v. *Industrial Acc. Com.*, *supra*; *Blue Diamond Plaster Co.*

v. *Industrial Acc. Com., supra; Johannsen* v. *Industrial Acc. Com.*, 113 Cal. App. 162 [298 Pac. 99].) The test under these cases is whether the employer knowingly or willfully committed an act that he knew or should have known was likely to cause harm to his employee. In the present case, the employer by knowingly violating its statutory duty to supply its employees with pure drinking water in closed containers and individual cups, set the conditions for the transmission of various communicable diseases and exposed its employees to the hazard of serious injury therefrom.

It is true that not every violation of a statute is serious and willful misconduct. (*Hoffman* v. *Dept. of Indus. Relations, supra; Helme* v. *Great Western Milling Co., supra.* See, also, *Ethel D. Co.* v. *Industrial Acc. Com., supra* (commission's safety order); *Great Western Power Co.* v. *Pillsbury*, 170 Cal. 180 [149 Pac. 35]; *Simpson* v. *Industrial Acc. Com.*, 87 Cal. App. 652 [262 Pac. 469]; 22 Cal. L. Rev. 432.) In *Hoffman* v. *Dept. of Indus. Relations*, 209 Cal. 383, 390 [287 Pac. 974, 68 A. L. R. 294], this court stated: "It will be conceded that the violation of one statute may be far more serious than the violation of another statute; and that the violation of the same statute under one set of facts may not be serious, whereas under a different set of facts it will be quite serious indeed." It has long been recognized that communicable diseases are readily transmitted by common drinking cups and the statutes in the present case were designed to safeguard employees against that hazard. Violation of these statutes is particularly serious when hundreds of men are employed on the same project at the same time and do not have access to other drinking water. ■ The employer is charged with knowledge of the statute (*Hoffman* v. *Dept. of Indus. Relations, supra.* See, also, 10 Cal. Jur. 760) and was found by the commission to know that the water was distributed in violation of the statutory requirements. On these issues there was no conflict. Violation of the statutes in question was not mere negligence (See *Hoffman* v. *Dept. of Indus. Relations, supra; Helme* v. *Great Western Milling Co., supra; In re Burns*, 218 Mass. 8 [105 N. E. 601, Ann. Cas. 1916A, 787]), but criminal conduct punishable as a misdemeanor. (Stats. 1917, p. 1517, Deering's Gen. Laws, Act. 6259; Stats. 1915, p. 815, Deering's Gen. Laws, Act 4725). ■ ". . . Where there is a deliberate breach of a law . . ., which is framed in the interests of the working

man, it will be held that such a breach . . . amounts to serious misconduct.'' So spoke the court in *Fidelity etc. Co.* v. *Industrial Acc. Com.*, 171 Cal. 728 [154 Pac. 834, L. R. A. 1916D, 903], annulling an award based on a finding that an employee whose injury resulted from a violation of speed laws was not guilty of serious and willful misconduct. The rule must be similarly applied to the conduct of an employer.

It remains to determine whether there is any evidence in the record from which the commission could find that there was no serious and willful misconduct by the employer despite the violation of the statutes. ■ It is well settled that the question whether serious and willful misconduct of the employer caused the employee's injury is essentially one of fact, and that if there is any substantial evidence to support the findings of the commission its award will not be disturbed. Its award will be set aside, however, if there is no evidence to support its findings. (*Hatheway* v. *Industrial Acc. Com.*, *supra; Ethel D. Co.* v. *Industrial Acc. Com.*, *supra.*) ■ Respondent places great emphasis on evidence in the record that the county health authorities considered the water safe for drinking. The employer seeks to draw an inference therefrom that it could not be charged with knowledge that the water was unfit for human consumption. Actually, however, the opinion of the health authorities referred only to the water in the reservoir nearly one year after the injury. They made no tests of the water before or at the time of the injury. Their examination did not extend to water in the buckets and dippers, which they had previously ordered discontinued. Even if an inference could be drawn that the employer was not chargeable with knowledge that the water in the reservoir was contaminated, it was nonetheless chargeable with knowledge of the danger incident to distribution by means of an open bucket and common dipper. ■ While there was evidence that J. Phillip Murphy, president, general manager, and sole stockholder of the employer corporation, had drunk the water from the common dipper, the most favorable inference that can be drawn therefrom is that he did not consider the means of distribution dangerous. It has been held, however, that an employer's mistake in judgment does not relieve him from liability for serious and willful misconduct. (*Blue Diamond Plaster Co.* v. *Industrial Acc. Com.*, *supra.*) The evidence that the drinking facilities were installed by

the general contractor and were used by its employees with no ill effects will not support the commission's finding. The commission's finding regarding the numerous complaints registered by the men destroys the pertinence of the alleged effect of the water on previous users. ▮ The testimony of the employer that it customarily accepted the facilities furnished by the general contractor and that the latter was under a contractual obligation to it with respect to such facilities indicates a misconception of its duties and liabilities with regard to the safety of its employees. The employer was aware of the general contractor's breach of contract. Its own statutory duty to furnish its employees with pure drinking water in closed containers and in individual drinking cups could not be delegated. ▮ In the light of the findings of the commission and in the absence of substantial evidence to support its conclusion that the injury was not caused by the serious and willful misconduct of the employer, the order denying additional compensation is annulled.

Shenk, J., Curtis, J., Edmonds, J., Carter, J., and Peters, J. pro tem., concurred.

Gibson, C. J., did not participate herein.