[Civ. No. 14287. Second Dist., Div. Three. May 29, 1944.]

CALIFORNIA SHIPBUILDING CORPORATION (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and BELLE REBECCA GADDIS, Respondents.

Thelen, Marrin, Johnson & Bridges and Gardiner Johnson for Petitioner.

Everett A. Corten, Fred Goldsworthy and Dan Murphy, Jr., for Respondents.

SHINN, J.—By this proceeding California Shipbuilding Corporation seeks annulment of an award made against it by Industrial Accident Commission in the amount of $2,500 in favor of Belle Rebecca Gaddis, widow of Jonas D. Gaddis, petitioner's employee, who was found to have met his death by reason of the willful and serious misconduct of his employer, petitioner herein. The proceeding does not bring in question a separate award against the insurer of the employer of the death benefit of $6,000. The findings include the following:

"3. This Commission now finds that the said injury and death of Jonas Dulpha Gaddis was directly and proximately caused by the serious and wilful misconduct of the employer herein and in support thereof specifies the following particulars:

"(a) Did knowingly and wilfully permit said employee to be in a place of employment which was patently unsafe and dangerous to life and limb in violation of Safety Order No. 6402 as the same is set forth in the Ship and Boat Building Safety Orders in full force and effect at the time of the injury and death of the deceased herein. [Corrected to read section 6402 of the Labor Code.]

"(b) Did knowingly and wilfully violate Safety Order No. 1806 of the said same Safety Orders in that in the space between the stairway, which was provided as a means of ingress and egress, and the point where the employee was required to perform his duties, there was a failure to provide sufficient planks as is and was required by said Safety Order. . . ."

Safety Order 1806 specifies: "Slip staging shall be not less than thirty-six (36) inches wide. Planks not less than twenty-four (24) feet long shall be used whenever possible." Section 6402 of the Labor Code reads: "No employer shall require, or permit any employee to go or be in any employment or place of employment which is not safe."

Petitioner's contention is that the commission acted in excess of its jurisdiction, in that there was no evidence that the employee's death was directly and proximately caused by a

violation of said safety order and no evidence that knowledge or notice of the alleged dangerous condition was shown to have been brought home to an "executive, managing officer, or general superintendent" of the employer (Lab. Code, § 4553) so as to charge the corporation with penal liability.

Gaddis was employed as a flanger's helper in the construction of a ship in the employer's yard at Terminal Island. He went to work at 4:30 p. m. on the day of his accident and at about 7 p. m. fell from the staging to the ground, receiving fatal injuries. The staging encircled the ship and consisted of six levels or working platforms. Completed sections of platform had three planks 2 inches by 12 inches by 24 feet, which overlapped at the ends. Gaddis and a fellow workman, Morkal, had reached the sixth level, which was approximately 40 feet high, by means of a ladderway which led to a 24-inch wide catwalk above the sixth level, from which they had climbed down to the platform where they were working. At this point there were but two 12-inch planks; to their right as they faced the ship there was a section that had only one plank. There is a conflict in the evidence as to the condition of the staging in the 20-foot section next to the ladderway. Counsel for the commission rely upon testimony that there was an open space of some 20 feet next to the ladderway, where there was no platform. Counsel for petitioner contend that the section next to the ladderway had one 12-inch plank and there was testimony to this effect. There is nothing in the record to indicate whether the commission found there was one plank or none at all at this point, but a specific finding was not necessary, as either condition would have been in violation of the safety order. At about 7 p. m. Gaddis announced to Morkal that he was going to get a drink of water. He started toward the ladderway, ostensibly to go to the ground where the fountain was located. A few minutes later Morkal saw him "on the end of the scaffold where there was no scaffolding any further"; when he looked again Gaddis had disappeared. He had fallen to the ground level into a bin of stanchions at a point 10 or 15 feet from the ladderway and directly beneath the unfinished section of the platform. No one saw the start of his fall and there was no direct evidence as to the cause of it. The contention of petitioner is that the finding that it was caused by the unsafe condition of the platform is based upon mere speculation and is unsupported by any logical deduction from

the established facts, or, in other words, that it is based not upon an inference drawn from proven facts but upon a succession of inferences of questionable weight. ▆ As we view it, the commission was required to determine first whether Gaddis fell either in attempting to cross over to the ladderway on his way to the ground or while attempting to return to his work. All of the circumstantial evidence, and such direct evidence as there was, points to the conclusion that he fell from some point within 20 feet of the ladderway. In crossing that section he would have had to walk on a single plank, or if none was there, climb down five or six feet to the fifth level. It is doubtful how he was attempting to negotiate the crossing but there is no doubt that whichever course he took was made necessary by the unfinished condition of the platform. It is possible that Gaddis may have fallen from the ladderway or from the fifth level after he had reached it in safety, but the probabilities strongly support the implied finding of the commission that he fell from a place where the platform was unfinished, and not from some place that was not unsafe or dangerous. But even if other inferences could reasonably be drawn as to the place from which he fell, we are bound to accept the inference which the commission drew if it is a reasonable and logical one. We regard it as more reasonable than any of the other possible inferences suggested by petitioner or by the proven facts.

If it is accepted as a fact, satisfactorily established by the evidence, that Gaddis fell while attempting to cross where the sixth level platform was unfinished, it is entirely logical to conclude that the immediate cause of his fall was the absence of a completed platform. This is only to say again that it is more reasonable to believe that he fell while attempting something difficult and dangerous than to believe that he fell after he had safely reached the ladderway or the completed platform on the fifth level. We find no reason to question the soundness of the finding that the direct and proximate cause of the accident was the violation of the safety order by the employer.

▆ The second ground of attack is that there was no evidence of serious and willful misconduct upon the part of an "executive, managing officer, or general superintendent" of petitioner, which is required by section 4553 of the Labor Code before an exemplary award can be made against a cor-

porate employer. There was evidence that two of petitioner's stage-rigger foremen had actual knowledge of the unfinished condition of the platform and of the fact that men were working on it. It was the duty of the foremen to take care of the general staging and to see that it was put in properly, and they determined what was required. They ordered staging material, including planking, as the staging was carried higher around the ship. They had been told that working platforms should be 36 inches wide. Unsafe conditions were reported to them by the safety inspectors and engineers when they were discovered, and it was the duty of the foremen to have the conditions corrected. There was no evidence that the actual condition of the staging where the accident occurred was known to anyone who was the superior of the foremen, nor was there evidence that anyone above the foremen superintended or directed staging construction. It was the duty of safety inspectors and engineers to inspect staging but there was no evidence that any of them was aware of the condition on the sixth level at the time and place of the accident. If the foremen were among those named in section 4553 of the Labor Code, petitioner is responsible in the amount of the penal award for their failure to observe the safety rule; otherwise it is not.

In *E. Clemens Horst Co.* v. *Industrial Acc. Com.* (1920), 184 Cal. 180, 190 [193 P. 105, 16 A.L.R. 611], it was held that the manager of a vegetable drying plant who was entirely entrusted with its operation was a "managing officer" as that term was used in the Workmen's Compensation Act. It was said that the word "officer" was not used in a technical, legal sense, but meant "a person in the corporation's employ, either elected or appointed, who is invested with the general conduct and control at a particular place of the business of a corporation."

In *Gordon* v. *Industrial Acc. Com.* (1926), 199 Cal. 420 [249 P. 849], a foreman of a gravel pit who had full charge of excavating gravel from the pit was held to be the "managing representative" of a partnership. It was said that the use of the words "general superintendent" with "managing officer" with relation to corporations, and with "managing representative" with respect to partnerships distinguished between those with general and those with special or limited authority and that one might be a managing officer or managing representative even though he had not the authority of a general superintendent.

In *Church etc.* v. *Industrial Acc. Com.* (1927), 86 Cal.App. 182 [260 P. 578], one Nowell, as architect and contractor, had contracted to build a church building. One Taylor, who was subject to advice and direction of Nowell, had charge and control of the men engaged in the work. It was said that he "occupied a position in relation to the work, of such description that at least he was foreman in charge of the work in which Barnes [the injured employee] was occupied at the time of the accident" and it was held that he was a "general superintendent" within the meaning of the Workmen's Compensation Act.

In *First Nat. Pictures, Inc.* v. *Industrial Acc. Com.* (1927), 87 Cal.App. 537 [262 P. 38], a foreman of the carpenter department of his employer, the petitioner, was held to be a "managing officer" of the corporation.

In *General P. Corp.* v. *Industrial Acc. Com.* (1928), 90 Cal.App. 101 [265 P. 508], without discussion of the status of the employee, a corporation was held liable for the serious and willful misconduct of a foreman who was in charge of making a change in a gasoline line.

A safety engineer of petitioner testified as follows: "Q. But who determines when staging should be erected? A. That more or less follows a routine procedure as far as fabrication is concerned. They are called upon to erect staging for any craft that requires it. Q. Who determines when it requires it? A. The stage rigger foremen, or the foremen of the other craft. Q. That is part of the stage-rigger foreman's job? A. That is part of his job."

The stage-rigger foremen were undoubtedly "managing officers" within the meaning of section 4553 of the Labor Code. They had the responsibility of erecting staging to keep up with the progress of the construction work and to see that it followed a routine procedure or pattern. They received no orders from superiors and required none. If they were not "managing officers" of their own department of the work, that department, so far as the record discloses, had no immediate managing officer. They had actual knowledge that the staging where the men were working was not constructed in accordance with the safety order and they had the primary responsibility of correcting that condition. Their acts and omissions under the circumstances were those of the corporation. It is serious and willful misconduct to allow employees to work under conditions made unsafe through

the employer's violation of safety orders of the commission. (*Hoffman* v. *Dept. of Industrial Relations* (1930), 209 Cal. 383 [287 P. 974, 68 A.L.R. 294]; *Pacific Emp. Ins. Co.* v. *Industrial Acc. Com.* (1930), 209 Cal. 412 [288 P. 66].)

█ An award against a corporation for serious and willful misconduct is proper where the unsafe condition which is the cause of injury has been created by an employee who has the independent duty of seeing that the law is complied with and that working conditions are made safe, or where an employee who is under that duty has knowledge of the unsafe condition and does nothing to correct it. Such an employee is a managing officer if his authority is complete in his own department of the work. The stage-rigger foremen had that authority.

█ The award for serious and willful misconduct was signed by three members of the commission. The return to the writ in its original form failed to disclose that the commissioners who signed the award had reviewed the record or were otherwise sufficiently informed as to the proof adduced at the hearings to enable them to decide the issue of serious and willful misconduct. Petitioner challenged the competency of the commissioners to decide that issue, since they had not heard the evidence and were not shown to have had knowledge of it. In response to an order for augmentation of the record, the commission has filed a certified copy of the report and recommendation of a referee who reviewed the record of the hearings on the charge of serious and willful misconduct. It is the practice of the commission to submit an application for rehearing to a referee other than the one who conducted the hearing and recommended an award, and the practice was followed in this case. The reviewing referee made a memorandum recommending denial of the petition for rehearing. It appears from this memorandum that a transcript of the evidence had been provided for his use and that points and authorities had been filed. It was stated that the evidence disclosed without serious question that there had been a violation of safety order No. 1806 and section 6402 of the Labor Code, in that the platform planking was unfinished and the platform was of insufficient width, and that there was substantial proof of notice of the existence of violations to the employer or its managing representatives. It was further stated that it was reasonable to believe that the employee fell through one of the gaps in the planking of

the scaffold over which he had to pass and that it appeared that the condition of the planking was the proximate cause of death. The commissioners' order denying a rehearing was based upon this report and recommendation. While the report did not include a summary of the evidence, it did state generally the facts as to the condition of the staging and the circumstances of the accident, which were established by the evidence, and it stated as an ultimate fact that the employee's fall resulted proximately from the defective staging. The practice of submitting petitions for rehearing to a reviewing referee is not unauthorized or improper. It tends rather to lessen the chances of error in the final determination. Such work must of necessity be done by referees. It would be impossible for the commissioners themselves to review the records on petitions for rehearing and the law does not impose that duty upon them. The commission may delegate to its referees the hearing of evidence and may act upon the findings and recommendations of the referees. (*Taylor* v. *Industrial Acc. Com.* (1940), 38 Cal.App.2d 75, 82 [100 P.2d 511].) There is equal authority for such procedure in passing upon petitions for rehearing. Under section 115 of the Labor Code, any investigation, inquiry or hearing which the commission may undertake or hold may be undertaken or held by a referee appointed for that purpose, and every finding, order, decision or award made by such referee pursuant to such investigation, inquiry or hearing, when approved and confirmed by the commission and ordered filed, is the finding, order, decision or award of the commission. The contentions relied upon in support of the petition for rehearing in the present case were the same as those urged upon the hearings. If they had been adequately considered theretofore, the commission was authorized to deny the petition without a further hearing. (Lab. Code, § 5906.) The record shows that they had been so considered. The order denying a rehearing, based upon the report and recommendation of the reviewing referee was in accordance with authorized procedure and was valid.

The award is affirmed.

Desmond, P. J., and Wood (Parker), J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied July 27, 1944. Shenk, J., and Edmonds, J., voted for a hearing.