[L. A. No. 14308. In Bank.—January 23, 1934.]

ETHEL D. COMPANY (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and J. L. JOHNSTON, Respondents.

700

Everts, Ewing, Wild & Everts and L. N. Barber for Petitioner.

A. I. Townsend and Everett A. Corten for Respondents.

THE COURT.—On application to the District Court of Appeal the award of the Industrial Accident Commission involved herein was affirmed, but by a divided court. We granted a petition to have the cause transferred to this court that we might give the majority and minority opinions rendered in the District Court of Appeal further consideration and study. Upon re-examination of the case, we are of the opinion that the majority opinion correctly states and applies the law applicable to the facts here. We, therefore, approve the same and adopt it as the opinion of this court. It was prepared by Mr. Justice Jennings and is as follows:

"This is a proceeding in *certiorari* to review an order of the Industrial Accident Commission awarding compensation to J. L. Johnston for injuries sustained by him during the course of his employment with the petitioner. The order of the commission awarded to the injured employee the sum of $1324.70 to be paid by the insurance carrier and an additional amount of $662.35 against petitioner based on a

finding of serious and wilful misconduct on the part of petitioner. That part of the order awarding additional compensation against petitioner is sought to be annulled by this proceeding.

"Respondent J. L. Johnston was employed as a pumper by petitioner, a corporation, which is engaged in the business of producing oil in Kern County, California. On December 5, 1929, Johnston ascended to the roof of the belt-house of an oil derrick on a well owned and operated by petitioner for the purpose of oiling the walking-beam which was above the belt-house roof. The ascent was made by means of a ladder which extended from the floor of the derrick to the roof of the belt-house. In constructing this ladder, one of the braces of the Sampson post was utilized as the right-hand stringer and the ladder rungs were fastened to this brace and to a left-hand stringer composed of two-inch by six-inch timber. The brace of the Sampson post was composed of six-inch by six-inch timber. The ladder rungs were of two-inch by six-inch timber and were uniformly spaced at a vertical distance of eleven inches. The width of the ladder was 16½ inches in the clear between the stringers. The ladder was not equipped with a railing nor with hand-holds. There was, however, a two-inch by four-inch post supporting the railing of the runway which extended along the side of the belt-house and a bolt which extended through the Sampson post 29 inches above the level of the top rung of the ladder projected from the Sampson post on the side nearest to the belt-house for a distance of two or three inches. After Johnston had completed the task of oiling the walking-beam he prepared to descend the ladder with his back thereto. He placed his right foot on the top rung of the ladder, the left foot being on the belt-house roof. When he placed his weight on the right foot preparatory to lifting the left foot from the roof to the ladder, the right foot slipped and he was precipitated a distance of approximately 18 feet to the derrick floor, sustaining thereby the injuries for which he was awarded compensation.

"The Industrial Accident Commission made the following finding: 'Said injury was caused by the serious and wilful misconduct of the employer, a corporation.' The statute which authorizes the allowance of an additional award against an employer amounting to 50 per cent of the dis-

ability compensation contains the following language: 'Provided, that where the employee is injured by reason of the serious and wilful misconduct of the employer . . . or if a corporation, on the part of an executive or managing officer or general superintendent thereof, the amount of compensation otherwise recoverable for injury or death, as hereinafter provided, shall be increased one half.' It is undisputed that the .only dereliction on the part of the employer, petitioner herein, which under the circumstances shown by the record, could justify the award of additional compensation against petitioner amounting to 50 per cent of the disability compensation consists of the failure of petitioner to provide secure handholds at the top of the ladder, heretofore described. Subdivision (f) of General Petroleum Industry Safety Order 1618, effective March 1, 1924, provides: 'Secure handholds shall be provided at the top of the ladder.'

"Petitioner's chief contention is that the commission's finding that the injuries of respondent Johnston were caused by the serious and wilful misconduct of petitioner is lacking in evidentiary support. In this connection, it is urged that at most there was a purely technical violation of subdivision (f) of Safety Order 1618, whose language requiring that *secure* handholds shall be provided, is obviously vague and indefinite and further that there was substantial compliance with the subdivision in that the post supporting the railing of the runway, which extended along the side of the belthouse and the projecting end of the bolt which passed through the Sampson post, were readily accessible to anyone on the top rungs of the ladder and furnished convenient and adequate handholds.

" 'Serious misconduct' of an employer, within the meaning of the statute permitting the allowance of compensation amounting to 50 per cent of the compensation for disability, was defined in *E. Clemens Horst Co.* v. *Industrial Acc. Com.*, 184 Cal. 180, 188 [193 Pac. 105, 108, 16 A. L. R. 611], to be 'Conduct which the employer either knew, or ought to have known, if he had turned his mind to the matter, to be conduct likely to jeopardize the safety of his employees.' In the same case it was said that, in order that serious misconduct should also be wilful misconduct within the meaning of the statute, the appearance of circumstances surround-

ing the act of commission or omission which 'evince a reckless disregard for the safety of others and a willingness to inflict the injury complained of' would amount to sufficient proof of knowledge by the employer of the unsafe condition of the premises to fulfill the requirement that the employer charged with wilful misconduct shall have knowledge that the act of commission or omission is wrongful. ■ It may be conceded that, generally speaking, the mere failure of an employer to comply literally with the requirement of a safety order of the Industrial Accident Commission does not of itself justify a finding that the employer is guilty of serious and wilful misconduct. In the final analysis, the circumstances presented by the evidence in any case will be determinative of the question of whether or not the employer's act may properly be characterized as 'serious and wilful misconduct'. What would amount to no more than simple negligence in one situation may well be denominated serious and wilful misconduct in another. (*Hoffman* v. *Dept. of Indus. Relations,* 209 Cal. 383, 390 [287 Pac. 974, 68 A. L. R. 294].) ■ In the instant case the continued presence upon and about the derrick of so slippery a substance as crude oil would seem to point unmistakably to the necessity of strict compliance with the provisions of the commission's Safety Order 1618 and to suggest to the person in charge of the oil-well that a ladder utilized by workmen should be provided with secure handholds rather than with such makeshift supports as the end of a bolt or an upright post supporting a railing. ■ At all events, the question of whether, under the circumstances, the employer should have known that the failure to provide more secure and more readily accessible handholds would be so likely to jeopardize the safety of employees as to evince a reckless disregard for their safety and a willingness to inflict injury, was a question of fact to be determined by the referee to whom the evidence in the case was submitted.

■ "During the course of the hearing, it was suggested by petitioner's counsel that the referee visit the scene of the accident and make an inspection of the premises. This was accordingly done. What the referee observed on this visit was evidence in the case. (*People* v. *Milner,* 122 Cal. 171 [54 Pac. 833]; *Hatton* v. *Gregg,* 4 Cal. App. 537, 540 [88 Pac. 592]; *Wright* v. *Locomobile Co. of America,* 33 Cal.

App. 694 [167 Pac. 407]; *Vaughan* v. *County of Tulare,* 56 Cal. App. 261, 265 [205 Pac. 21]; *MacPherson* v. *West Coast Transit Co.,* 94 Cal. App. 463, 466 [271 Pac. 509].) Undoubtedly, the knowledge gained by this visit had much to do with the conclusions embodied in the referee's report to the commission which forms the basis for the findings and award of the commission. The knowledge thus acquired may in and of itself amply justify the finding of serious and wilful misconduct on the part of petitioner. It is not available to us other than it is to some extent reflected in that portion of the referee's official report to the commission which is included in the answer of respondent Industrial Accident Commission to the petition. Therein is set forth in the language of the referee a description of the visit made by him to the scene of the accident, the pertinent observation that he descended the ladder in the same manner in which respondent Johnston testified that he descended 'because I should have certainly been afraid to do so in any other manner', together with the referee's observations respecting the nonaccessibility of the post of the railing and the projecting end of the bolt which petitioner contends furnished convenient handholds and amounted to substantial and sufficient compliance with the commission's safety order. To sustain petitioner's contention in this regard would mean that we should have to reject the referee's expressed conclusion respecting the nonaccessibility of those parts of the derrick relied upon by petitioner as affording secure and convenient handholds. This we are not justified in doing unless the other evidence which is presented by the record produces settled conviction that the referee's conclusion respecting the nonaccessibility of the claimed handholds was incorrect. Careful examination of the record has failed to produce such conviction and we therefore conclude that the finding of serious and wilful misconduct is not so entirely lacking in evidentiary support as to require annulment of the award.

■ "Furthermore, in this connection, it is to be borne in mind that, in a proceeding of this character, where this court is asked to review an award of the Industrial Accident Commission, annulment of the award is authorized only when the commission acted without or beyond its powers, or when the award was procured by fraud, or is unreasonable,

or when the findings of fact do not support it. The findings themselves are not subject to review except in so far as they may have been made without any evidence whatever in their support. Even then a review of the findings is based upon the theory that the commission had no jurisdiction to make a finding entirely unsupported by evidence rather than upon the theory usually presented upon appeals that findings of a trial court are lacking in sufficient evidentiary support which imposes upon the reviewing tribunal the duty of weighing evidence to arrive at a determination of that proposition. (*Dearborn* v. *Industrial Acc. Com.*, 187 Cal. 591, 594 [203 Pac. 112]; *Hartford A. & I. Co.* v. *Industrial Acc. Com.*, 202 Cal. 688, 692 [262 Pac. 309, 58 A. L. R. 1392]; *Independence Indem. Co.* v. *Industrial Acc. Com.*, 203 Cal. 51, 56; *Newton* v. *Industrial Acc. Com.*, 204 Cal. 185, 189 [267 Pac. 542, 60 A. L. R. 1279].)

"It is further objected that the finding of the commission that the failure of petitioner to have provided secure handholds was the proximate cause of the injuries sustained by respondent Johnston is not warranted by the evidence. In support of the objection thus presented it is argued that the sole proximate cause of the injuries sustained was the negligence of the employee in attempting to descend the ladder in the manner in which he did as though he were descending a flight of stairs rather than by using both hands and feet in the manner which a person usually does in descending a ladder. It is pointed out that Johnston could have rendered the beginning of his descent more steady by grasping either the supporting post of the railing of the runway or the portion of the bolt projecting from the Sampson post and that by failing to do so and by stepping on the ladder facing out from it as though he were walking down a stairway he was himself guilty of negligence, which was the sole proximate cause of the fall and the injuries resulting therefrom. Respondent Johnston was questioned at length as to these matters on cross-examination. He testified that he always descended the ladder in the manner in which he began the descent on the date of the accident for the reason that the ladder was too nearly vertical to permit descent in the usual manner and that in making the descent facing out from the ladder the upright post supporting the railing of the runway was

behind him, making it impracticable for him to utilize it as a handhold. It further appears from his testimony that, as he prepared to descend the ladder on December 5, 1929, he held in óne hand a quart can fastened to the end of a stick three feet in length and that the can contained an unspecified quantity of crude oil. The general superintendent of petitioner admitted upon cross-examination that a man descending the ladder face outward would be compelled to reach behind him in order 'to grasp the upright post of the runway railing but stated that he could utilize the end of the bolt protruding from the Sampson post as a handhold if he desired.

"It is the general rule that the question of the proximate cause of injury is one to be determined by the trier of facts from the facts and circumstances developed by the evidence. In the instant case, it is to be remembered that the referee visited the scene of the accident and observed the ladder, its manner of construction, and the post and protruding bolt which it is claimed furnished secure handholds. As above noted, the knowledge thus acquired by the trier of facts was evidence and it may well be that this evidence in and of itself was sufficient to justify the finding that the failure of petitioner to provide secure handholds was the proximate cause of the fall and the ensuing injuries. At all events, it does not sufficiently appear from the record that respondent Johnston was negligent in attempting to descend the ladder in the manner above described nor that, encumbered as he was by the oil can in his hand, he was negligent in failing to grasp the upright post some distance behind him or the protruding bolt some distance in front of him. Furthermore, if it be assumed that Johnston was negligent in attempting to descend the ladder facing outward, it does not necessarily follow that his negligence in this regard was the proximate cause of the injuries which he sustained. The fact still remains that the ladder was not equipped with secure handholds and that the post and projecting bolt were not so readily accessible to him as to afford adequate security for his descent under the circumstances narrated.

"A further contention is presented that the evidence shows that the oil well where the accident occurred had been visited on various occasions by inspectors of the State

Industrial Accident Commission and that such inspectors had recommended various unspecified changes which were always made, but that at no time was any recommendation made with respect to the ladder. From this it is argued that the Accident Commission in its administrative capacity, in effect, approved the ladder and its method of construction and that such approval is sufficient to obviate the charge of serious and wilful misconduct in having failed to provide secure handholds. The contention is untenable. In the first place, the evidence with respect to the visits of inspectors is too vague to support so bold an argument. More important, the duty of petitioner to comply with the safety order of the Accident Commission was one that petitioner owed directly to its employees. It is their safety which is at stake when there is noncompliance with the orders of the commission, the very object and purpose of which is obviously to insure the maximum safety to individuals engaged in the performance of work which presents unusual hazards and dangers. The Industrial Accident Commission, in its administrative capacity, possesses no authority to waive or consent to the violation of a duty owing primarily and directly to the employee from the employer.

■ "It is further contended that the commission's findings are fatally defective in that they fail to specify what was the particular act or omission of petitioner which was concluded to amount to serious and wilful misconduct. This contention is likewise without merit. It is well established that findings are required to be findings of ultimate facts. (24 Cal. Jur., p. 968; *Coit* v. *Western Union Telegraph Co.*, 130 Cal. 657 [63 Pac. 83, 80 Am. St. Rep. 153, 53 L. R. A. 678]; *Talbot* v. *Ginocchio*, 18 Cal. App. 390 [123 Pac. 223].) The ultimate fact upon which the right of respondent Johnston to receive an award of additional compensation depended was that his injuries were caused by the serious and wilful misconduct of his employer. (*Clarke* v. *Industrial Acc. Com.*, 87 Cal. App. 766, 771 [262 Pac. 471].) It is also the rule that findings are sufficient if they can be made certain by reference to the record. (24 Cal. Jur., p. 964; *Kennedy etc. Co.* v. *S. S. Const. Co.*, 123 Cal. 584 [56 Pac. 457].) Application of this latter rule establishes the sufficiency of the findings. The only dereliction of peti-

tioner for which it was claimed the injured employee was entitled to be awarded additional compensation was the failure of petitioner to have provided secure handholds for the ladder. In all other respects, it was shown that the construction of the ladder complied fully with the safety order of the commission and there was no pretense by the injured employee that it did not with the single exception that it was not provided with secure handholds.

"The final contention advanced by petitioner is that the finding of the commission that the injuries were caused by the serious and wilful misconduct of the employer, a corporation, is fatally defective in that it fails to state that the injuries were caused by the serious and wilful misconduct of an executive or managing officer or general superintendent of the corporation. The statute which authorizes the recovery of additional compensation provides, as heretofore noted, that where the employee is injured by reason of the serious and wilful misconduct of the employer 'or if a corporation, on the part of an executive or managing officer or general superintendent' additional compensation may be awarded. It is obvious that a corporation is incapable of wilful misconduct. Wilfulness presupposes mentality. A corporation is a purely legal fiction possessing neither the physical nor mental attributes of a human being. The record herein shows that H. F. Owen was general manager of the petitioner corporation at the time the accident occurred and that from 1913 until 1929 he was superintendent of petitioner and that all properties of petitioner were under his supervision as superintendent. It does not appear from the record that, at any time material to the inquiry herein, any person other than Owen exercised any control or supervision over the oil well where the accident occurred. It is thus apparent that the only individual who could be charged with serious and wilful misconduct was the man who had entire supervision and control of the oil well. Since the commission's finding can so readily be rendered definite and certain by reference to the record, no difficulty is encountered in declaring that the finding is not fatally defective in the respect claimed by petitioner."

For the reasons stated, the award is affirmed.