[Civ. No. 12412. Second Appellate District, Division One.—March 20, 1940.]

WALLACE TAYLOR, Petitioner, v. INDUSTRIAL ACCI-
DENT COMMISSION, ZELLA THOMAS et al., Re-
spondents.

F. Britton McConnell for Petitioner.

Everett A. Corten and Eldon B. Spofford for Respondents.

WHITE, J.—This cause comes before us on a writ of *certiorari* issued upon the application of petitioner, Wallace Taylor, to review an award made by respondent Industrial Accident Commission in favor of the surviving wife and minor children of Walter J. Thomas, who was employed by petitioner as a well driller in connection with the drilling of an oil well at Montebello, California, and who sustained injuries, arising out of and occurring in the course of his employment, which proximately caused his death on the day following. In addition to its award of the normal compensation benefit, the commission increased such award one-half, or in the sum of $2,500, for the serious and wilful misconduct of the employer. It is not contended that decedent's dependents were not entitled to the normal award; and petitioner here seeks only a review of the additional award of $2,500 for the serious and wilful misconduct charged against him. Therefore the only question involved here is as to the legality of the award made against the employer based upon the findings that decedent's injury was caused by the serious and wilful misconduct of such employer.

There is no serious conflict in the facts, which epitomized are that petitioner, Wallace Taylor, was drilling an oil well at Montebello, and the deceased, Walter J. Thomas, was employed as a driller, in which capacity he was in charge of the well and a crew of men. Decedent and his crew came on shift at 12 o'clock midnight, and the accident resulting in his death occurred shortly after 1:30 A. M. The drilling on the well had been completed a few days before the accident, and the "blowout preventer" required to be used and which was used during the drilling operations was detached from the well and removed from the premises. It might here be stated

that a "blowout preventer" is a valve device commonly in use in oil well drilling operations. Its use in such operations is required under the Oil and Gas Conservation Law (Act 4916, Deering's Gen. Laws, sec. 3; Stats. 1915, p. 1404, and amendments) to "prevent blowouts, explosions, and fires". Its use was also required by ordinance No. 262 of the city of Montebello in effect at the time of the accident. The initial production test proving unsatisfactory, it was decided to deepen the well by further drilling operations. To accomplish this it was necessary to pull out the tubing before drilling operations could be recommenced. The crew working the shift which ended at midnight was engaged throughout that shift in pulling the tubing, and completed this operation about 12 o'clock. It further appears that on the same night petitioner Taylor made arrangements for the delivery of the "blowout preventer", with the necessary fittings and pipe, to the premises upon which the well was located. Petitioner Taylor talked with decedent, Thomas, shortly before midnight, and instructed the latter to install the "blowout preventer", which was then on its way, and further stated that Mr. Simms, another employee, would be there shortly with the "blowout" equipment and would assist in putting it on. Following the giving of these instructions, Taylor left the premises.

At about the time for the change of shifts Mr. Simms arrived with the "blowout" equipment. He had received instructions from petitioner Taylor to stay at the well while the "blowout preventer" was being installed in the event any welding was necessary, and also to assist in the installation of such "blowout preventer". Upon his arrival at the premises Simms reported to the driller, decedent Thomas, and advised him of his readiness to put the "blowout preventer" on. The record discloses that, contrary to the instructions given him by his employer Taylor, the decedent Thomas told Simms that he would wait until daylight to put the "blowout preventer" on, and instructed Simms to return early in the morning, thus leaving the "blowout preventer" unattached to the well. Upon directions from decedent Thomas, the crew commenced the drilling operations, the first phase of which was to make up pipe. While the crew was so engaged, approximately one and one-half hours later, the "blowout" occurred, at which time, as hereinbefore indicated, the "blowout preventer" was unattached to the well. Prior to the occurrence of the first

puff of gas constituting the "blowout", the well had been what in drilling parlance is termed "killed" by filling it with water. At the time of the "blowout" the derrick man, Phillips, was up on the derrick in connection with the operation of making up pipe. When the well began to blow out from the force of the gas puffing up through the water in the well hole, some water was forced up out of the well hole and upward to a height of about four feet above the derrick floor. This liquid was striking against and dropping from tongs attached to a length of drill pipe which was being made up. One of the members of the drilling crew started to detach the tongs, and while doing this was instructed by the derrick man Phillips, who was then descending the derrick, not to do this, and in accordance with such directions he discontinued. About that time decedent Thomas, who was in charge of the crew, ordered that the pumps be started, which, the evidence indicates, was intended to pump additional water from the slush pit into the well hole to replace that which had been displaced by the "blowout". It appears that Phillips felt that this procedure was not proper and called out to "leave them [pumps] alone." At this juncture decedent Thomas, who was on the floor of the derrick, called back that there was nothing to get excited about and to go ahead and open the pumps. It appears that in carrying out this order given by decedent Thomas, one of the men at the pumps opened a valve that should have been left closed if it was intended to pump water into the hole. The opening of this valve allowed gas pressure in the well to be lined up through an open pipe line leading out to the sump instead of directing a flow of water from the slush pit into the well hole. A sump on an oil lease is used to hold mud sometimes used in drilling operations and to hold oil and liquid which may flow from the well. Mud in the sump is mixed or churned by a strong flow of water directed through a nozzle on the bank of the sump, which nozzle is commonly called a mud gun. It appears, however, that when the wrong valve was opened, a stream of oil, water and gas was projected from the well hole through the pump manifold out through a line of pipe to the mud gun on the edge of the sump. This mixture shot from the mud gun back toward the boilers which decedent Thomas was using. The stream from the mud gun became ignited and the fire traveled back along the course of the stream to the sump and the sump took fire. From there a

flame was seen to travel along the ground toward the derrick, and an explosion occurred on the floor of the derrick. Decedent Thomas and the derrick man Phillips were on the derrick floor at that time and both were burned, Thomas so severely that as a result thereof he died on the following day.

■ Petitioner first contends that the procedure followed by the commission in this case was not in accord with, but in violation of, the powers and duties conferred upon it by law. In this connection it should be observed that following the original hearing a rehearing was granted. When the matter was called for rehearing petitioner herein, in his capacity as employer, objected to the same taking place before the referee who had presided at the original hearing, on the ground that such referee had already made up his mind that the employer was guilty of serious and wilful misconduct. This objection was overruled. To the decision of the commission ordered after rehearing petitioner interposes two other objections: First, that with reference to the issue of serious and wilful misconduct the finding that ''said injury was caused by the serious and wilful misconduct of the employer'' is totally insufficient and in fact amounts only to a conclusion of law; second, that while the decision was purportedly rendered by ''the Commission'', in truth and in fact the three commissioners who signed the decision did not at any time ''consider'' or ''decide'' the case.

With reference to the objection made to the referee, section 5311 of the Labor Code provides that such objection may be made on any of the grounds specified in section 641 of the Code of Civil Procedure. We find in the last-named section that subdivision 6 thereof authorizes an objection to the referee when such officer has ''formed or expressed an unqualified opinion or belief as to the merits of the action''. Conceding that the referee in the instant proceeding had already, by his findings made at the original hearing, ''expressed an opinion'' concerning the merits of the cause, that does not in our judgment of itself disqualify him from presiding at a rehearing of the cause, for the reason that his opinion as to the merits of the case as embodied in his original findings was based upon the evidence then before him and upon his conception of the law as applied to such evidence. There is no showing that the opinion of the referee was a fixed one,

or that should other or additional evidence be produced upon a rehearing his decision would be the same as on the original hearing. The very fact that a rehearing was granted upon the suggestion as well as the concurrence of such referee to our minds indicates a lack of bias or prejudice or fixed opinion upon his part as to the merits of the case. We perceive no prejudice to the petitioner arising out of the denial of his motion to disqualify the trial referee.

We come now to a consideration of the sufficiency of the finding on the issue of serious and wilful misconduct. In *Gouanillou* v. *Industrial Acc. Com.*, 184 Cal. 418 [193 Pac. 937], it was said: "Since the Industrial Accident Commission is a judicial body exercising judicial functions, its decisions and awards are subject to those general legal principles which circumscribe and regulate the judgments of all judicial tribunals." Therefore, the sufficiency of the questioned finding must be determined in the light of rules applicable to such procedure in our courts. Section 5313 of the Labor Code provides that the referee shall report his findings in writing to the commission within fifteen days after the testimony is closed, and provides further that "the facts found and conclusions of law shall be separately stated." Section 5315 of the Labor Code clothes the commission with power to confirm, adopt, modify or set aside the report of the referee or any part thereof, and to enter its order, findings, decision or award, based in whole or in part upon the report of the referee, or upon the record in the case. In the cause before us the record discloses that the referee conducted the hearing and made a detailed and comprehensive report thereon, embodying his conclusions. This report was forwarded to the San Francisco office of the commission, where it was reviewed by another referee, who briefly epitomized the facts and made a recommendation that a normal award be made coupled with the additional award based on the serious and wilful misconduct of the employer. Thereafter the commission rendered its "decision after rehearing", which included findings that so far as the issue of serious and wilful misconduct of the employer was concerned, contained only the following language: "Said injury was caused by the serious and wilful misconduct of the employer." Such a finding is totally inadequate, and does not amount to a finding at all. It is a mere

conclusion of law. Findings should be so framed that the defeated party can specify intelligently the particulars in which they are not supported by the evidence, where such point is made. In the case at bar the finding under review is general and indefinite. While it is not necessary that the facts as found must be in any particular form or follow the pleadings, it is nevertheless essential that findings be such that the truth or falsity of each material allegation in issue can be demonstrated from the findings. Measured by this rule, the finding here in question falls far short of what is required to comply with the law. The findings must disclose the theory upon which they are grounded when the issue is controverted. If, for instance, the commission based its finding of serious and wilful misconduct upon the part of the employer on his failure to erect upon the well premises a firewall, firebreak, windbreak, partition, or housing between the well and the boilers, or upon the violation of ordinance, statute, or regulation, then it should so state, to the end that this court may be in a position to determine whether the theory upon which the finding was predicated is supported by the evidence. An appellate tribunal is not in a position to judge of the credibility of witnesses or the value and weight of evidence, but must determine the truth or falsity of the allegations in issue from the findings made therefrom by the trier of facts.

Although it becomes necessary to remand the cause to the commission for further findings, we are disposed to give consideration to the other point raised on this appeal, to the end that reargument and rebriefing thereof may not become necessary following the remaking of its findings by the commission. With reference to petitioner's contention that the three commissioners who signed the decision did not at any time in fact "consider" or "decide" the case, we are impressed that the same is without merit. The Labor Code authorizes the commission to appoint referees, which referees are clothed with the power, jurisdiction and authority granted by law, contained in the order of appointment, and fixed by the rules of the commission. (Labor Code, sec. 5310.) Referees so appointed report their findings to the commission. (Labor Code, sec. 5313.) Upon the filing of the report of the referee the commission, as heretofore pointed out, is author-

ized to confirm, modify, adopt or set aside such report, in whole or in part, and may base its decision or award "upon the report of the referee, *or* upon the record in the case". (Labor Code, sec. 5315.) It is at once apparent that the very object of the statute is to enable the commission to use the report of the referee in its entirety or in part as the basis for a decision or award, or, if dissatisfied with such referee's report, the commission is authorized to resort to the record in the case. In basing its decision in the instant case upon the report of the referee, the commission violated none of petitioner's rights. The Labor Code authorizes the commission to delegate to its referees the hearing of evidence in industrial accident cases, and such referee, who heard the evidence and the arguments thereon, is authorized to make findings and to recommend a decision or award based thereon. When the commission adopts the facts found and the decision recommended by the one who is authorized to and does hear the evidence, then the commission is not required to review the record. An entirely different situation would be presented if the commission, disregarding and setting aside the findings and recommendation of the referee, undertook, without a review of the evidence, to appraise the same and make determinations based thereon. Such is not the case here presented.

The conclusion at which we have arrived with reference to the commission's finding of serious and wilful misconduct on the part of the employer renders unnecessary a discussion of the final contention of petitioner as to the sufficiency of the evidence to support such finding.

The award by the commission of additional benefits based upon the asserted serious and wilful misconduct of petitioner in his capacity of employer is annulled, and the cause remanded to the commission with directions to make further and additional findings upon the controverted issue of serious and wilful misconduct of the employer in accordance with the views herein expressed.

York, P. J., and Doran, J., concurred.