[Civ. No. 6793. Third Dist. Sept. 29, 1942.]

MILDRED DAWSON et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

R. P. Stimmel and Spann, Carr, Cibula & Frazier for Petitioners.

Everett A. Corten and Keith & Creede for Respondents.

THOMPSON, J.—By means of a writ of certiorari the

widow and minor children of Paul Glen Dawson, deceased, seek to review an order of the Industrial Accident Commission, denying additional compensation for his death on the ground of alleged serious and wilful misconduct of the employer in failing to maintain safe staging upon which he was required to work in a shaft. That claim was presented in accordance with the provisions of section 4553 of the Labor Code. The commission adopted findings pursuant to which the petitioners were awarded damages in the sum of $6,150. It was, however, further determined that the employer was not guilty of serious and wilful misconduct as alleged, or at all, and additional compensation was denied on that account. A petition for rehearing was also denied.

The petition is prosecuted by Mildred Dawson, the widow of Paul Glen Dawson, deceased, and by Paul Dawson, Jr., and Francis Dawson, minor children, by their guardian ad litem, Mildred Dawson. The application on behalf of these petitioners charged the respondent Pacific Constructors, Inc., with serious and wilful misconduct resulting in the death of Paul Glen Dawson.

At the time of receiving the injuries which caused his death, the decedent was employed by the Pacific Constructors, Inc., which is engaged in the construction of the Shasta Dam, located near Redding, Shasta County, California. The building of the dam requires the sinking of a series of shafts, which are subsequently filled with concrete, thus insuring a solid foundation for the dam. The decedent was working in one of these shafts, Number 1315, at the time of the fatal accident, which occurred on the 4th day of March, 1941. This shaft was originally 150 feet in depth.

The evidence indicates that at the time of the accident a small portion of concrete had been poured which covered the bottom of the shaft, decreasing its depth to some extent. In company with three fellow workers, Mr. Dawson, who was employed with the night shift, descended into the shaft and reached a point designated as the 100-foot level. At this point they stepped upon a platform which was supported by staging and framework retained in place by means of wedges driven between the staging and the wall of the shaft. The framework was progressively removed from the bottom of the shaft as the pouring of concrete proceeded. This process included the removal by the workmen of debris, muck, loose timbers, and shaling rock. It was performed by aid of workmen operating from the platform nearest the base

of the shaft. The staging and platforms below the 100-foot level, in this shaft Number 1315, had previously been removed. The removal of this framework was performed under the direction of the United States Bureau of Reclamation under whose supervision the construction of Shasta Dam was being conducted.

The men who were working in the shaft immediately prior to the time of the accident used this platform located at the 100-foot level, upon which there was also deposited from time to time two heavy buckets filled with muck. Prior to the time of the accident there was nothing to indicate that the platform or its staging was insecure. The platform did not vibrate or give any indication that it was in a dangerous condition. There is no evidence that the staging was then known to be defective.

No inspection of the staging was made during the interval between the change of the shift of workmen. After this change occurred the decedent and his three companions were employed on this landing only a moment or two when the entire platform was dislodged. Mr. Dawson and one of his fellow workmen fell a distance of forty or fifty feet to the bottom of the shaft, and were fatally injured. They died two days later as a result of the accident. Mr. Moore, who was on that platform when it collapsed, escaped serious injury. His fall was intercepted by a stationary cable and saw which caught his foot, suspended his body and saved him from fatal injury. He was subsequently rescued from that position unharmed. Mr. Patton, the fourth member of the crew, was standing on a ladder when the platform was dislodged, and he also escaped injury.

No witness seemed to know exactly what caused the collapsing of the platform. The record contains much speculation in that regard. The petitioners assume, and their theory may be correct, that several heavy timbers which rested on the rock wall at the foot of the shaft extending vertically on one side of the structure, to the top thereof and which were supported by an alleged cracked or defective spreader or crossbeam near the top, for some unknown reason were dislodged just after the change of the shift of workmen occurred and caused the upright beams to fall inward, upsetting the platform upon which the workmen stood. These vertical beams were installed to cover a lateral tunnel which had been previously opened into the main shaft, for the purpose

of protecting workmen from the danger of falling rock and debris from that source.

The hearing lasted for several days. The claim for compensation was hotly contested. The record consists of 490 pages. The commission adopted findings to the effect that the workman, Paul Glen Dawson, was injured in the course of his employment by falling from a platform in a shaft while he was engaged by the Pacific Constructors, Incorporated, as a result of which he subsequently died. The widow and minor children were awarded compensation on that account in the sum of $6,150. But the commission further found that the accident was not caused by the serious and wilful misconduct of his employer. Additional compensation on that account was denied.

The petitioners for this writ of review contend that the Pacific Constructors, Incorporated, and its shaft superintendent, Mr. Regan, were guilty of serious and wilful misconduct, in installing and maintaining in the shaft dangerously-defective and inadequate staging and structure upon which the employees were compelled to work, and in neglecting to properly brace, block or wedge the framework in the shaft so as to render it safe and secure. It is claimed there is no substantial evidence to support the finding of the commission that the employer or its agents were not guilty of serious and wilful misconduct. It is also asserted the finding which was adopted on the subject of serious and wilful misconduct is not specific or adequate, and that it fails to determine the ultimate facts in that regard.

At the argument of this case it was suggested that, pursuant to the recent opinion of the Supreme Court in the case of *Laisne* v. *California State Board of Optometry,* 19 Cal. (2d) 831 [123 P. (2d) 457], the reviewing court may reexamine and weigh the evidence as in a trial de novo to determine the facts upon which the increase of award was denied.

The Laisne case has no application to the present proceeding. That case is specifically distinguished by the court from proceedings under the Workmen's Compensation Act. Article XX, section 21, of the California Constitution authorizes the Legislature to confer "full provision for vesting power, authority and jurisdiction in an administrative body with all the requisite governmental functions to determine any dispute or matter arising under such legislation, to the end that the administration of such legislation shall accom-

plish substantial justice in all cases expeditiously, inexpensively, and without incumbrance of any character."

Pursuant to that constitutional provision, section 5952 of the Labor Code was enacted and declares that:

"The review by the court shall not be extended further than to determine whether:

. . . . . . . .

"(d) If findings of fact are made, such findings of fact support the order, decision, or award under review."

The following section of the Labor Code provides in part that:

"The findings and conclusions of the commission on questions of fact *are conclusive and final and are not subject to review.*" (Italics ours.)

In determining that the limitation of jurisdiction of so-called quasi-judicial tribunals referred to in the Laisne case does not apply to proceedings under the Workmen's Compensation Act, the court said at page 838 of that opinion:

"The court concludes, however, that section 21 of article XX sufficiently modifies section 1 of article VI to permit the Industrial Accident Commission to act as a court."

Since the Industrial Accident Commission is authorized to and does act as a court in a quasi-judicial capacity, and there is no appeal from its decisions, its proceedings may not be tried de novo by a reviewing court. (2 Campbell on Workmen's Comp. 1341, § 1616.) The remedy of certiorari is confined to cases in which the inferior tribunal lacks jurisdiction or has exceeded its jurisdiction and there is no appeal from its decision. (§§ 1068, 1074, Code Civ. Proc.; *Garvin* v. *Chambers,* 195 Cal. 212 [232 Pac. 696]; 4 Cal. Jur. 1019, § 1; 2 Campbell on Workmen's Comp. 1339, § 1615.)

 There is no merit in the contention that the commission failed to adopt findings upon the subject of serious and wilful misconduct sufficient to support its denial of additional compensation under section 4553 of the Labor Code. The commission adopted a finding that:

"Said injury and death was not proximately, or at all, caused by the serious and wilful misconduct of the employer herein."

Based on that finding the commission ordered that the employer be "dismissed and discharged from liability herein upon the issue of serious and wilful misconduct."

Section 5313 of the Labor Code merely requires that "The

facts found and conclusions of law shall be separately stated.'' We assume that the findings of the commission should conform to the general rules applicable thereto in trials which are conducted by superior courts, and that they should consist only of a determination of ultimate facts as distinguished from probative facts. (*Smith* v. *Industrial Acc. Comm.*, 26 Cal. App. 560 [147 Pac. 600] ; 27 Cal. Jur. 489, § 158.) ■ When the findings which are adopted are not irreconcilably conflicting and they may be made certain by reference to the record, they are deemed to be sufficient. (*Ethel D. Co.* v. *Industrial Acc. Comm.*, 219 Cal. 699, 708 [28 P. (2d) 919].)

■ The case of *Taylor* v. *Industrial Acc. Comm.*, 38 Cal. App. (2d) 75 [100 P. (2d) 511], upon which the petitioners rely for support of their contention that the finding in question is inadequate, may be readily distinguished from the facts of this case. In our opinion that decision is not controlling in this case. In the Taylor case extra compensation was allowed for wilful misconduct. The commission merely found that ''said injury was caused by the serious and wilful misconduct of the employer.'' The award was set aside and the commission was directed to adopt more specific findings as to what particular acts or conduct it considered as wilful misconduct. Several distinct acts were alleged and relied upon by the petitioners as proof of wilful misconduct. Under the circumstances of that case the mere affirmative finding that ''the employer was guilty of wilful misconduct'' left an uncertainty as to what particular alleged acts or conduct were deemed to constitute wilful misconduct. The findings on that subject which were adopted were therefore clearly insufficient. The reviewing court properly remanded that cause for the adoption of more specific findings. If there had been only a single designated act or omission pleaded or relied upon by the petitioner as constituting wilful misconduct, it would have been sufficient for the commission to have found that the injury was caused ''by the serious and wilful misconduct of the employer.'' The record would have then shown definitely the application of the finding adopted to the evidence adduced. Under such circumstances that general finding would be adequate. (*Ethel D. Co.* v. *Industrial Acc. Com.*, *supra.*)

In the present proceeding just the converse of the Taylor case exists. In this case several different acts or omissions on the part of the employer were relied upon to support the charge of wilful misconduct. In effect, the commission found that none of those asserted acts or omissions constituted wilful

misconduct. There is no uncertainty regarding the application of that finding. The commission determined each and every one of those issues. Under the circumstances of this case the negative finding of the commission on the issue of wilful misconduct was a complete determination of the ultimate facts. In the case of *Caywood* v. *Farrell,* 175 Ill. 480 [51 N. E. 775], it was held that "as, in an action for negligence, a finding that the plaintiff did not use ordinary care to avoid the injury or that the defendant was not guilty of willful or wanton injury" constituted a finding of mere ultimate facts.

The burden is on the petitioners to prove that an employer is guilty of serious and wilful misconduct which results in the injury complained of, to entitle the claimant to the increase of compensation provided for in section 4553 of the Labor Code. After a careful examination of the record in this proceeding we are unable to say as a matter of law that the Pacific Constructors, Incorporated, was guilty of serious and wilful misconduct. There appears to be substantial evidence to support the challenged finding in that regard. There is a conflict of evidence regarding the alleged defective spreader or crossbeam near the top of the structure against which the vertical timbers rested. It does appear these upright timbers were securely braced against two proper crossbeams at lower elevations of the structure. Most of the witnesses conceded that the structure was built and maintained in the usual standard manner employed in such shafts throughout the western portion of the United States. It was inspected by a federal superintendent of the works.

It is also claimed that the absence of certain hanger-rods and the failure to properly block and wedge the frame of the structure in its position in the shaft led to the collapse of the platform. But the evidence is also conflicting in that regard.

We may concede that these defects, if they actually existed, indicate negligence or even gross negligence, on the part of the employer, but it does not follow that it would therefore be guilty of serious and wilful misconduct on that account. The question of serious and wilful misconduct is ordinarily one of fact to be determined by the commission. Its determination in that respect may not be interfered with by a reviewing court when there is substantial evidence to support the finding. (*Hatheway* v. *Industrial Acc. Com.,* 13 Cal.(2d) 377,

382 [90 P. (2d) 68]; *Ethel D. Co.* v. *Industrial Acc. Com.,* *supra*; 27 Cal. Jur. 441, §§ 118 and 119.) In the Hatheway case, *supra,* it is said in that regard:

"In considering the evidence, it must be kept in mind that the question of wilful misconduct is essentially a question of fact, and that on this petition it is our duty to indulge in all reasonable inferences to support the award. As was stated in *Ethel D. Co.* v. *Industrial Acc. Com.,* 219 Cal. 699, 704 [28 P. (2d) 919]: 'At all events, the question of whether, under the circumstances, the employer should have known that the failure to provide more secure and more readily accessible handholds would be so likely to jeopardize the safety of employees as to evince a reckless disregard for their safety and a willingness to inflict injury, was a question of fact to be determined by the referee to whom the evidence in the case was submitted.''

In the Ethel D. Co. case, *supra,* the court said:

"It is to be borne in mind that, in a proceeding of this character, where the court is asked to review an award of the Industrial Accident Commission, annulment of the award is authorized only when the commission acted without or beyond its powers, or when the award was procured by fraud, or is unreasonable, or when the findings of fact do not support it. The findings themselves are not subject to review except in so far as they may have been made without any evidence whatever in their support. Even then a review of the findings is based upon the theory that the commission had no jurisdiction to make a finding entirely unsupported by evidence rather than upon the theory usually presented upon appeals that findings of a trial court are lacking in sufficient evidentiary support which imposes upon the reviewing tribunal the duty of weighing evidence to arrive at a determination of that proposition. [Citing several authorities.] "

█ It will be observed that the misconduct on the part of the employer which will justify an increase of compensation provided for by section 4553 of the Labor Code must be both "serious and wilful." The term "wilful misconduct," as it is used in that section, involves the same sort of dereliction of duty as that on the part of the driver of an automobile which authorizes an individual to recover damages for personal injuries sustained while riding as a guest in the machine of another person, under section 403 of the Vehicle Code. In the case of *Norton* v. *Puter,* 138 Cal. App. 253 [32 P. (2d) 172], at page 258, that term is defined as follows:

"Wilful misconduct depends upon the facts of a particular case and necessarily involves deliberate, intentional or wanton conduct in doing or omitting to perform acts, with knowledge or appreciation of the fact, on the part of the culpable person, that danger is likely to result therefrom. [Citing numerous authorities.]"

The preceding definition is approved by the Supreme Court in the case of *Porter* v. *Hofman*, 12 Cal. (2d) 445 [85 P. (2d) 447], at page 447.

In the case of *Helme* v. *Great Western Milling Co.*, 43 Cal. App. 416 [185 Pac. 510], at page 421, the court says:

" 'Wilful misconduct' means something different from and more than negligence, however gross. The term 'serious and wilful misconduct' is described by the supreme court of Massachusetts as being something 'much more than mere negligence, or even gross or culpable negligence,' and as involving 'conduct of a *quasi* criminal nature, the intentional doing of something either with the knowledge that it is likely to result in serious injury, or with wanton and reckless disregard of its possible consequences.' . . . To constitute 'wilful misconduct' there must be actual knowledge, or that which in the law is esteemed to be the equivalent of actual knowledge, of the peril to be apprehended from the failure to act, coupled with a conscious failure to act to the end of averting injury."

Applying the previous definitions of wilful misconduct to this case, it follows that the burden was on the petitioners to prove that the authorized agents of the employer had either actual or constructive knowledge of the fact that the platform or structure upon which it rested in the shaft was so defective and dangerous that they should have reasonably anticipated that injury to the workmen employed thereon was likely to result. It is not contended that the employer or its agents deliberately intended to injure the workmen. There is no evidence of the occurrence of any previous accident of that character. No complaint of alleged defective or dangerous staging had been called to the attention of the employer.

Under the circumstances of this case we are not authorized to interfere with the order of the commission denying the petitioners additional compensation for alleged serious and wilful misconduct.

The order is affirmed.

Adams, P. J., and Paulsen, J. pro tem., concurred.