[Civ. No. 13516. First Dist., Div. One. Oct. 16, 1947.]

HENRY J. KAISER COMPANY (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and EDWARD HORTON, Respondents.

Thelen, Marrin, Johnson & Bridges for Petitioner.

T. Groezinger and John A. Rowe, Jr., for Respondents.

WARD, J.—This is a review of an order of the Industrial Accident Commission awarding to Edward Horton, 50 per cent additional compensation by reason of a finding of serious and wilful misconduct on the part of his employer.

The employer, a corporation, operates a rock crushing plant in Contra Costa County. It is admitted that respondent employee sustained certain injuries arising out of and occurring in the course of his employment; that subsequently he was an applicant before the Industrial Accident Commission for ordinary compensation (Lab. Code, § 3207), and for an increased compensation award directly in favor of the employee and against the employer for serious and wilful misconduct (Lab. Code, § 4553). The applications were granted.

Horton was employed as a laborer in the screening and separating unit of the crusher plant, which unit was in charge of Frank Bertagnolli, and was operated apparently by a set of push buttons located on a raised platform or tower from which position the operator supervised the work. Wooden bins were located beneath screens, which acted as selectors in sorting out the various sizes of rock dumped upon them. During a shutdown of the screening operations due to the fact that trucks had not yet arrived from the gravel pit with rock to be screened, Bertagnolli, who is generally referred to in the transcript of evidence as "Red," directed Horton to enter a bin for the purpose of cleaning out an accumulation of debris and clearing the screen of rocks which clogged it.

In the performance of this work Horton was required to work in a bent over or a prone position. He had just finished the cleaning when Red "started the machinery just as I got my head through the hole coming out from under the screen and this revolving screen has about a three or four inch angle bar on it. When I hollered, it hit me in the mouth and threw me up on top of it. He stopped it when I hollered." Red immediately ran to Horton's assistance, exclaiming: "I'm sorry I forgot I sent you in there." Horton received "a crushing injury of the premaxillary bone, and of the alveolar bone of the maxillae and their contained teeth. The alveolar bone injury extended from the right first molar tooth to the left first bicuspid tooth. Some of the teeth were pushed palatally, some were forced forwardly toward the lip, and some of the teeth were depressed deeply into the soft tissues of the face." Part of the jaw bone was eventually removed by surgical operation; other injuries of a serious nature were sustained. Horton eventually returned to work but to an easier job.

Bertagnolli testified: "As plant operator I have the job of starting the belts and the machinery on the plant itself; and as the foreman I have the responsibility of seeing that the men at the plant itself discharge their jobs. . . . As the foreman I have the responsibility of seeing that the men carry out certain jobs attached to the operation of the plant itself. . . . Well, that is to say, the belts, the conveyor belts and the moving equipment in the plant such as the crushers and the screens, with the exception. . . . Well, the operation of the plant itself, after all the equipment is started, the operation begins with the carrying of rock out of the pit, which is up the hill, I'd say maybe a quarter of a mile or so, and it is brought down by means of trucks. . . . I don't tell them [the truck drivers] what to haul or when to haul or anything of the sort. My operation, as far as the plant itself is concerned, begins with the unloading of the material from the pit into the grizzly, which is the start of the rock actually on its way along the conveyors and into the screens and the crushers and the what not. That is where my responsibility begins and then, as I say, I have a control for the feeder at the grizzly and the belts that takes the rock from that particular place to the other equipment in the process of crushing and screening and what not." There are approximately seven men working in connection with the screens, including

mechanics, oilers and laborers, to whom the head operator or foreman gave "orders." As stated, the injured employee was classified as a laborer. One of the duties of the laborers was to clear the screens as often as necessary, generally during the noon hour. On this occasion the head operator and foreman said to the employee: "You might as well go and clean it now as wait till noon."

Speaking of the accident, Bertagnolli said: "I didn't actually see the rib hit Ed. . . . I saw it seconds after it happened because the screen doesn't stop and start immediately. In other words, the momentum of the screen itself, if it has a load in it, will start with a jerk and the momentum of the screen itself will carry on. Now what happened, I hit the button, stopped it immediately, and the momentum carried Ed right on the top side of the screen. . . . I don't know what hit him as far as actually seeing him, but the only thing that could have hit him is the so-called rib." Bertagnolli had complete charge of starting and stopping the mechanical operation of the machine. In answer to the question: "It was not safe for him to be where he was working if the machinery was put in motion?" the head operator answered: "No. Naturally." In answer to the question, "You wouldn't have started it if you had remembered he was there, would you?" Bertagnolli answered: "Certainly not." The report made by the foreman reads: "11:15 to 12:00, 45 minutes time down. Horton injured, plant stopped." The plant had stopped prior thereto while the foreman awaited the arrival of the trucks. To the question "In other words, at about 10:20 the plant stopped and it was closed down all the rest of the morning except for just the momentary start when Horton was hurt?" Bertagnolli answered: "That's right."

Wilbur, designated at the plant superintendent, testified that he was in charge of the plant, but the only order he could remember giving to the injured employee was on the first day of his arrival and that order was "to report to Red." In answer to the question: "In fact, he [Red] had charge of men such as Horton in directing them in the performance of all of their duties, didn't he?" he answered: "That's right."

The original hearing referee determined that Horton's injury was due to negligence but that no serious and wilful misconduct was involved. The commission may require a referee merely to hold hearings and to make return of the

testimony of the commission (Lab. Code, § 5314), or if findings are made by the referee to report such findings to the commission. "Upon the filing of the report of the referee, the commission may confirm, adopt, modify, or set aside the same or any part thereof and may, with or without further proceedings, and with or without notice, enter its order, findings, decision, or award based in whole or in part upon the report of the referee, or upon the record in the case." (Lab. Code, § 5315.) In the present matter the report of the referee was filed and "having read the entire transcript" the commission panel—so to speak—reversed the finding of the referee and found that the injury was due to serious and wilful misconduct.

The main purpose of this review is to have declared erroneous the serious and wilful misconduct finding made by the commission panel. In this respect, three contentions are made in the petition. First, that the record supports only a finding of "negligence or forgetfulness," and not wilful misconduct; second, even if wilful misconduct could be charged against the fellow-employee who was responsible for Horton's injury, such employee was not an "executive, managing officer or general superintendent" of the corporation, as is required under Labor Code, section 4553, as a condition to the right of an injured corporate employee to the 50 per cent added compensation; and, third, that since Horton's application for the award set out several grounds of alleged serious and wilful misconduct based upon Labor Code, sections 6400-6404, the commission's general finding of such misconduct—as above set out—is fatally deficient.

If either the second or the third contentions, though somewhat technical, may be upheld, it will not be necessary to discuss the main issue presented, namely, serious and wilful misconduct.

Petitioner maintains that the entire plant was an integrated unit, and solely in charge of one Wilbur, the "plant superintendent"; and that the foreman was only in charge of the "screening" machinery and the "foreman" of those employees of the plant who worked about that machinery. It may be conceded that it is not the name applied to an officer or employee, such as vice-president, foreman, etc., but rather the actual duty and authority bestowed upon such person that determines the question. Petitioner relies upon *Bechtel etc. Corp.* v. *Industrial Acc. Com.*, 25 Cal.2d 171 [153 P.2d

331]. There is some language in the cited case that might be construed in support of petitioner's contention, but the gist of the decision is that it is not the title of the party but whether he has been invested with supervisory and discretionary powers of direction.

Respondents rely upon *California Shipbuilding Corp.* v. *Industrial Acc. Com.*, 27 Cal.2d 536 [165 P.2d 669], and *Vega Aircraft* v. *Industrial Acc. Com.*, 27 Cal.2d 529 [165 P.2d 665]. In the shipbuilding case it appeared that there had been delegated to a certain shipwright foreman, the duty of erecting guard rails about all uncovered holes on the deck of the ship in conformity with Industrial Accident Commission safety rules. It was held that the foreman had sufficient general discretionary powers of a substantial nature bestowed upon him, so that he might be designated an authorized managing officer. However, in the Vega Aircraft case it was said that the test set forth in the Bechtel case applied to the facts of the Vega Aircraft case. In the Bechtel case the status of the foreman was that of one who received numerous orders daily from his superiors. In the present case the foreman received orders only occasionally.

A foreman, head operator or other employee may be a supervisory employee, with bestowed powers of a supervisor or managing officer or directing head within the meaning of section 4553 although such person has charge of but a small unit of an entire plant, if his invested authority is a general discretionary power of direction and control of an integrate department of his employer's business. (*California Shipbuilding Corp.* v. *Industrial Acc. Com.*, *supra*.)

In this case the facts heretofore noted are sufficient to hold that the foreman or head operator, Bertagnolli, was invested with such general discretionary powers of command over employees as to classify him as a supervisory employee (*Bechtel etc. Corp.* v. *Industrial Acc. Com.*, *supra; Vega Aircraft* v. *Industrial Acc. Com.*, *supra*) duly authorized to represent the company.

Petitioner also contends that the commission's general finding that "the injury herein was caused by the serious and wilful misconduct of the employer" cannot be sustained because it does not indicate which of the grounds alleged in the application, i. e., Labor Code, section 6400-6404, was found to be the basis of the commission's added award. The sections referred to have to do with the safety of the employees, and

the duty of the employer with respect thereto. Respondents rely upon *Taylor* v. *Industrial Acc. Com.*, 38 Cal.App.2d 75 [100 P.2d 511], and *Dawson* v. *Industrial Acc. Com.*, 54 Cal. App.2d 594 [129 P.2d 479]. It will not be necessary to consider this point at great length as petitioner in the closing brief or on oral argument did not press it.

It is sufficient to say that in *Vega Aircraft* v. *Industrial Acc. Com., supra,* a wilful misconduct case, not on all fours with the facts of the Taylor case, the court at page 536 said: "The finding is sufficient because it can be made certain by reference to the record." Whatever merit may be ascribed to the holding in the Taylor case, the Supreme Court in *Lumbermen's Mut. Cas. Co.* v. *Industrial Acc. Com.*, 29 Cal.2d 492 [175 P.2d 823] (often referred to as the Cacozza case) said at page 499: "The case of *Taylor* v. *Industrial Acc. Com.*, 38 Cal.App.2d 75 [100 P.2d 511], relied upon by petitioner, insofar as it holds that a finding that there was seriout and wilful misconduct is insufficient, is out of harmony with the foregoing authorities, and is disapproved."

This court is bound by the latest expressed view of the Supreme Court, namely, that a general finding will suffice, regardless of the number of allegations set out, to fix the element of serious and wilful misconduct. In substance, it was held that the commission need only find ultimate facts, with no necessity of finding on probative facts upon which the ultimate finding is based. No definition of serious and wilful misconduct on the part of the employer appears in the Workmen's Compensation Act but the purpose of the section has been considered in judicial decisions.

Serious and wilful misconduct is determined upon the facts of each case. It is the rule that whether serious and wilful misconduct has been made out by the evidence is a question of fact for the commission, and a reviewing court will not interfere with the commission's determination on conflicting evidence or on inferences reasonably drawn therefrom. (Lab. Code, § 5953; *Hatheway* v. *Industrial Acc. Com.*, 13 Cal.2d 377 [90 P.2d 68]; *Ethel D. Co.* v. *Industrial Acc. Com.*, 219 Cal. 699 [28 P.2d 919]; *Dawson* v. *Industrial Acc. Com., supra.*) There must be knowledge or the equivalent of knowledge, from all the surrounding circumstances, that the act or omission to act is likely to result in serious injury to others. In the present case the foreman knew that he had ordered the employee into such a position that

if anyone pressed the switch button that set the machinery in operation, it became a position of danger.

In *E. Clemens Horst Co.* v. *Industrial Acc. Com.*, 184 Cal. 180 [193 P. 105, 16 A.L.R. 611], the superintendent of the particular plant involved testified that certain machinery upon which the injured employee was working "occasionally became clogged" and that he knew that a shaft connected with the machine "was open underneath and on the back." However, as the representative of the owner of the plant he had never "turned his mind to the matter"; he had ignored and dismissed the dangerous condition of the machinery from his mind either through indifference or forgetfulness. Similarly, if the representative of the employer in this case had not forgotten but had *"turned his mind to the matter"* of the employee under the grading cage, the action of pressing the operating button would not have occurred. In *Vega Aircraft* v. *Industrial Acc. Com., supra*, 533-534, it is said: "Serious and wilful misconduct is conduct which the employer knew, or should have known, was likely to result in serious injury or which evinced reckless disregard for the safety of the employe." The misconduct on the part of the employer must be serious *and* wilful. (Lab. Code, § 4553.) " 'Serious misconduct' of an employer must, therefore, be taken to mean conduct which the employer either knew, or ought to have known, *if he had turned his mind to the matter,* to be conduct likely to jeopardize the safety of his employees." (Emphasis added.) (*E. Clemens Horst Co.* v. *Industrial Acc. Com., supra,* p. 188; see, also, Beven on Workmen's Compensation (4th ed.), p. 401.) "It is so well settled as to require no citation of authority that petitioner was charged with the duty of maintaining a safe place for its employees to work, and we do not think it can be said the evidence is insufficient to establish serious misconduct in that petitioner's officers knew, or ought to have known, *if they had turned their minds to consider* the matter, of the conditions under which Mrs. Hamilton was required to work. [Emphasis added.] Next, as to whether such serious misconduct was 'wilful.' It has frequently been said that willful misconduct involves the *knowledge* of the person that the thing he is doing is wrong. [Citing cases.] Conceding that knowledge is required, it seems to us that in order to prove the requisite knowledge, it is not necessary for the evidence to show positively that the person was notified of the unsafe condition of his premises, but that it is sufficient if it appears

that the circumstances surrounding the act of commission or omission are such as 'evince a reckless disregard for the safety of others and a willingness to inflict the injury complained of.' (*Louisville etc. Ry Co.* v. *Bryan,* 107 Ind. 51 [7 N.E. 807].)'' (*E. Clemens Horst Co.* v. *Industrial Acc. Com., supra,* p. 189; see, also, *Dawson* v. *Industrial Acc. Com., supra; Porter* v. *Hofman,* 12 Cal.2d 445 [85 P.2d 447].) In *Johannsen* v. *Industrial Acc. Com.,* 113 Cal.App. 162, 166 [298 P. 99], it is said: ''Had he turned his mind to a consideration of the subject he must have known that a person working in the trench was in jeopardy, which danger could readily have been obviated by the necessary bracing.''

It has been said that wilfulness must show some degree of wantonness. The word ''wanton'' may not be an apt expression to be used in defining ''wilful misconduct'' as the latter term *is used in the Workmen's Compensation Act.* (Lab. Code, § 4553.) ''Wanton'' as there used means merely that the act or its omission was reckless and in disregard of injury likely to occur to others. It is noteworthy that recent Supreme Court decisions relative to wilfulness as used in section 4553 are not based upon the use of the word ''wanton.'' (*Vega Aircraft* v. *Industrial Acc. Com., supra; California Shipbuilding Corp.* v. *Industrial Acc. Com., supra; Hatheway* v. *Industrial Acc. Com., supra; Bethlehem Steel Co.* v. *Industrail Acc. Com.,* 23 Cal.2d 659 [145 P.2d 583].)

The test whether an act is *wilful* misconduct as used in section 4553 is not that the employer knew that the act would, and intended that it should, harm an employee, but rather that the employer or his managing official representative knew or *should have known* that the performance of the act or its omission *was likely* to cause harm to an employee. (*Parkhurst* v. *Industrial Acc. Com.,* 20 Cal.2d 826 [129 P.2d 113]; *Bethlehem Steel Co.* v. *Industrial Acc. Com., supra; Vega Aircraft* v. *Industrial Acc. Com., supra.*)

A given condition may be the result of facts constituting mere negligence, whereas under different circumstances it may be regarded as arising from wilful misconduct. In the present case the foreman testified that it was not safe for an employee to be where ''he [the employee] was'' if the machinery was put in motion.

Petitioner contends that the facts here present merely a case of negligence based upon forgetfulness. Forgetfulness assumes at least a momentary period during which one is

insensible of previous knowledge of facts, circumstances or conditions. Heedlessly omitting to do or not to do an act which results in injury to another may be the basis of a suit for damages. *A transitory or short-lived period of oblivion to a known danger is negligence as a matter of law where the forgetfulness is not induced by some sudden and inadvertent disturbing cause.* (19 Cal.Jur., p. 586, § 28.) Whether some sudden and sufficiently disturbing cause intervened is a question to be determined by the triers of the facts.

 Negligent conduct may occur from inadvertently doing an act or inattentive omission of its performance. Wilful misconduct means something more. As applied to the facts of the present case a condition had arisen solely by reason of the corporation representative placing an employee in a position of danger. No concurrent or contributing act or omission to act was involved. The full duty to protect the employee rested upon the corporation's representative. The effort made by the employee to escape from the position of danger was nullified and extinguished by the representative of the corporation. The foreman ordered the employee into a space to clear the screen of rock. He testified that the operation of the machine had been stopped because trucks had not arrived with rock, and that his attention had been distracted by another employee. With this condition existing, when trucks arrived with rock the foreman ascended the platform or tower from which he could see the operation of the several screens and the machinery, but could not see the employee under the screens. He pressed the button or buttons located behind him, which started the operation of the machinery, and stopped it immediately when he heard the cry of the employee when injured. The foreman knew that the employee had descended below the screen, and knew that starting the machinery would result in danger to the employee. (*Gordon* v. *Industrial Acc. Com.*, 199 Cal. 420 [249 P. 849, 58 A.L.R. 1374].)

There is evidence that the foreman did not see the employee when he was under the so-called chute. There is evidence that the foreman from the operating tower saw another employee on an upper chute and waited until that man was out of danger; and there is evidence from which a reasonable inference may be drawn that not until Horton "was carried up on top of the screen" through the operation of the machinery "and he jumped up and held himself on the struc-

ture'' was the foreman able to see him, although he had previously heard him ''holler.''

While forgetfulness of a known danger alone under some circumstances may constitute only negligence, in the present case there was more than inattention. The sending of an employee into, under or near machinery which, if it moves, will injure him, without providing some means of protecting such employee other than the memory of the foreman when starting the machinery, he being in a position where he could not observe the peril of the employee, was in and of itself sufficient to warrant a finding of wilful misconduct by the commission.

Whether the failure of the *company* to place the head operator in a position where he could see an employee working under the screen; whether there was a distraction of the foreman's mind sufficient to exonerate the employer from the charge of wilful misconduct; and whether the corporation had taken reasonable precaution, irrespective of status or rules, to eliminate reckless conduct on the part of a foreman, in view of all the facts and circumstances of this case, were questions to be decided by the triers of the facts. (*Bethlehem Steel Co.* v. *Industrial Acc. Com., supra; Neel* v. *Mannings, Inc.,* 19 Cal.2d 647 [122 P.2d 576] ; *Gibson* v. *County of Mendocino,* 16 Cal.2d 80 [105 P.2d 105].) A reviewing court may not say as a matter of law, in view of all the facts and circumstances, that the finding of serious and wilful misconduct is not supported or that it is unreasonable or in excess of the powers of the commission. On the contrary, the commission was justified in finding serious and wilful misconduct in that the act of directing an employee to perform the particular work assigned, with the possibility of starting up the machinery before the completion thereof, was the performance of a reckless act that was dangerous and likely to result in physical injury.

The award of the commission is affirmed.

Peters, P. J., and Bray, J., concurred.